## JACKSON and others vs. CLEVELAND.

Where a contract by J. to construct a railroad for C. provides that "for a failure to complete the work within the time fixed for its completion, or in case it shall appear to the engineer [of the company] that the work is not progressing with sufficient rapidity to secure its completion within the specified time, C. may employ other or additional help to hasten its completion, and the expense of such help shall be paid by J. to C., or the said engineer may in such case determine that the contract has been abandoned by J., and in the event of such determination this agreement on the part of C. shall be null and void, and he shall have full right to contract with any other person for the completion of the work," C. may recover any actual damages accruing to him by reason of J.'s default in failing to complete the work, and is not restricted to the remedies expressly provided by the terms of the contract.

Where such contract further provides that monthly estimates of the value of the work done shall be made by the engineer, and that eighty-five per cent. of such estimates shall be paid down, and the remaining fifteen per cent. retained "until the contract is completed and accepted by the engineer," the contractor cannot recover any part of the fifteen per cent. reserved upon the value of the work actually done, without showing a full performance of the contract or an excuse for the non-performance.

APPEAL from the Circuit Court for *Racine* County.

On the 24th of February, 1855, defendant contracted with the La Crosse and Milwaukee Railroad Company to construct that part of its line of road "extending from the Junction to Horicon on the east bank of Rock River," to the satisfaction and acceptance of the chief engineer of the company. The work was to be fully completed to Hartford by the 1st of August of that year, and to Horicon within sixty days after the company should deliver the iron rails at its depot in Milwaukee. Monthly detailed estimates for work done and material delivered were to be made by the chief engineer, and ninety per cent. of the estimates to be paid by the 10th of the month succeeding that for which they were made, the company retaining the ten per cent. as security for the fulfillment of the agreement on defendant's part. There is no express reservation in the contract of a right on the part of the company to declare a forfeiture for a failure to complete the road at the time specified, or for any other reason. On the 27th of the

same month the plaintiffs contracted with the defendant to construct said road, to the satisfaction and acceptance of the engineer of said company, "from the eastern end of section thirty-five to Rock River;" and to complete the same before the first of August, 1855. The contract further provides as follows: "that for a failure to complete the work within the time fixed, or in case it shall appear to said engineer that the work is not progressing with sufficient rapidity to insure its completion within the specified time, said party of the second part [*Cleveland*] may employ additional help to hasten its completion, and the expense of such help shall be paid by said party of the first part to said party of the second part, or said engineer may, in such case, determine that the contract has been abandoned by the party of the first part, in which event this agreement on the part of said party of the second part shall be null and void, and he shall have full right to contract with any other person for the completion of the work." On condition of the fulfillment by plaintiffs of the provisions of this contract, defendant was to pay them for the work at certain specified rates. Monthly estimates were to be made by the chief engineer as the work progressed; and eighty-five per cent. of such estimates were to be paid by the 14th of the succeeding month, the remaining fifteen per cent. to be retained "until the contract [should be] completed and accepted by the engineer." There was also a provision that defendant should "procure the right of way and all necessary engineering," so that the plaintiffs should not be "delayed in the prosecution of the work for the want of the same." Plaintiffs commenced to build the road under the contract, and continued work thereon until August 10th, 1855. The complaint alleges that on the day last mentioned, said railroad company rescinded its contract with the defendant (for the alleged reason that he had failed to perform its conditions), and notified the defendant and the plaintiffs of such rescission and the reason thereof, and directed plaintiffs to cease work

under said contract, and that the engineer of the company, under its direction, refused to lay out, superintend or direct any further work under said contract, and notified the defendant and the plaintiffs that no more work would be laid out, directed or superintended under said contract, nor any estimates of work done by plaintiffs under the contract made by said engineers; by reason whereof plaintiffs were compelled to cease and did cease work under their said contract; that defendant also ceased work under his contract, and abandoned the road; and that the company immediately thereafter took possession of the entire road-bed and all unfinished work thereon, and continued to hold possession of the same. The complaint then alleges that, prior to said 10th of August, plaintiffs had performed certain specified work under their contract, which had been accepted by the engineers of the company; that the same was worth certain specified rates; that the defendant was paid much more than those rates for the same work, by said company; and that defendant has received pay from the company for all the work so done and materials furnished by plaintiffs; that from time to time, as the work progressed, they received monthly estimates from the engineer of the company of the work so done and materials furnished, and defendant had paid them $8,270.44 on account thereof; that after said 10th of August, they received a final estimate of such work and materials; that they had frequently demanded payment of the amount due them from the defendant, and he promised to pay the same when he should get a settlement, and get pay from said company; that defendant recovered judgment against the company for the full amount of all work done under the contract, and sold the same and was paid therefor; that afterwards plaintiffs demanded payment from him of the amount due thereon, which he refused; and that there is now due them from him, for work done and materials furnished under the contract, $3,351, with interest from September 1, 1855.—There was a sec-

ond cause of action alleged, for $345, with interest from August 10, 1855.

The defendant answered denying the allegations of the complaint above stated, and alleging that defendant continued work under his contract with the company until he and his teams were driven away therefrom by the plaintiffs, and others acting with them, on the 22d of August, 1855, and that before the commencement of this action defendant had paid to plaintiffs eighty-five per cent. on all the work performed and estimated by monthly estimates of the chief engineer of the company under plaintiffs' contract with defendant, and had fully performed all the conditions of said contract by him to be performed. The answer further insists that plaintiffs "never did complete their said contract, prior to or on the first of August, 1855, but afterwards, to-wit, on or about the 10th of August, 1855, without any reasonable cause and without the consent of defendant, abandoned said contract, leaving the work unfinished." The second cause of action is also denied. The answer then sets up a counter-claim for damages accruing to the defendant from plaintiffs' failure to complete the work called for by their contract. There was a reply in denial.

On the trial, after plaintiffs had introduced evidence to sustain the several allegations of the complaint, defendant called witnesses to prove his counter-claim, but the court refused to receive any evidence for that purpose, on the ground that no penalty, except those provided in the contract, could be enforced for a breach thereof on the part of plaintiffs. The defendant then introduced some evidence to sustain the other issues on his part. The court gave the jury the following among other instructions: "6th. If the railroad company even wrongfully notified the plaintiffs that it had rescinded the *Cleveland* contract, and directed them to do no more work, they were justified in abandoning said work, and were entitled to recover the full contract price for all the work done by them under

their contract with the defendant, including the fifteen per cent. reserved by the contract to insure the completion thereof; and it was immaterial, as between the parties to this action, whether said company was authorized or not so to declare said contract rescinded." The court refused to give the following instructions requested by defendant: "1st. If you find from the evidence that the defendant paid to the plaintiffs upon all the monthly estimates which were called for by the contract between the parties, the eighty-five per cent. to their satisfaction, and that the plaintiffs, on the 10th of August, 1855, without any default on the part of the defendant under his contract, abandoned said contract, left said work, and never thereafter did any work under the contract, then you will find for the defendant as to the first cause of action." " 3d. If you find that the defendant continued work on said railroad, under his contract with the company, until the 22d of August, 1855, and till he was driven off the work by persons interested in [a contract for the same work entered into by the company on the 10th of August], including the plaintiffs, then your verdict must be for the defendant on the first cause of action, if you find that he was not in default under his contract with the plaintiffs." " 4th. Even if the plaintiffs did not request or consent to the rescission of *Cleveland's* contract by the company, yet, in attempting to do so, the company was a mere wrong-doer, unless *Cleveland* was in default under his contract, or the company had the right, under the contract, to declare the same rescinded, which it is for the plaintiffs to prove ; and without such default of *Cleveland* or right in the company, the attempt of the company to rescind the contract and eject the plaintiffs from their work was a wrong for which the company might be liable to an action by the plaintiffs ; but such contract of the company, if without the instance and against the will of *Cleveland*, would not make him liable as for default on his contract with plaintiffs, nor release the plaint-

iffs from the obligation of performing their contract with the defendant."

Verdict and judgment for the plaintiffs for the amounts claimed under both causes of action ; and the defendant appealed.

*Matt. H. Carpenter*, for appellant, argued : 1. That the contract, in express terms, makes the payment of the fifteen per cent. to depend upon the completion of the work to the acceptance of the engineer, as a condition precedent. " To entitle the party to recover for work done upon construction contracts, he must show either that he has performed the labor according to the contract, or that the other party has waived strict performance or hindered it." Redfield on Railways, 200, 201 ; *Andrews v. The City of Portland*, 35 Me., 475 ; *Faunce v. Burke*, 16 Pa. St., 469 ; *Cunningham v. Morrell*, 10 Johns., 203 ; *Williams v. A. & K. R. R. Co.*, 36 Me., 201. The fifteen per cent. is in the nature of liquidated damages for breach of the contract. *Faunce v. Burke, supra ; Easton v. Pa. & Ohio Canal Co.*, 13 Ohio, 79 ; *Hennessy v. Farrell*, 4 Cush. (Mass.), 267 ; *Ranger v. Great Western R. R. Co.*, 27 Eng. L. & E., 35. To the point that the wrongful act of the company, if the plaintiffs had not connived at it, would have subjected the company to an action by the sub-contractors, but could not dissolve the contract between the plaintiffs and the defendant, see *Herrick v. Vt. Central R. R. Co.*, 27 Vt., 673 ; *Hollingsworth v. Dow*, 19 Pick., 228 ; *Thayer v. Vt. Central R. R. Co.*, 24 Vt., 440. 2. If, against the express provisions of the contract, the plaintiffs can recover the fifteen per cent., on the ground that the wrongful act of the railroad company on the 10th of August excused them from a subsequent completion of the contract, surely *Cleveland* may offset the damages resulting to him in consequence of the previous breach of the contract by the plaintiffs. The court erred, therefore, in refusing to allow the defendant to prove his counter-claim. Either the contract itself fixes all the rights of the parties in

case of default by the sub-contractors, giving *Cleveland* a right to retain the fifteen per cent. as liquidated damages and declare the contract at an end; or the fifteen per cent. is to be regarded as a fund to indemnify *Cleveland* for his damages from the breach by the sub-contractors, and the excess of that fund over the actual damages may be recovered by the plaintiffs, or the excess of the damages over fifteen per cent. may be recovered by the defendant. In deciding the case on demurrer, 15 Wis., 107, this court inclined to the latter view. To the same effect see *Danville Bridge Co. v. Pomroy*, 15 Pa. St., 151. In all those cases where it is held that covenants are partially dependent and partially independent, and that ratable performance entitles to ratable recovery, it is held that the defendant may recoup or have a cross action for his damages, as he may elect. *Norris v. La Farge*, 3 E. D. Smith, 375; *Van Epps v. Harrison*, 5 Hill, 63; *Blanchard v. Ely*, 21 Wend., 342; *Sickels v. Pattison*, 14 id., 257; *Hayward v. Leonard*, 7 Pick., 181; *Dyer v. Jones*, 8 Vt., 205; 2 Smith's L. C. (1st ed. 1847), 32; *Booth v. Tyson*, 15 Vt., 515.

*E. Mariner*, with whom were *Cary & Pratt*, for respondents:

The road-bed was the property of the railroad company, and not of the plaintiffs or the defendant. Their right to be upon or interfere with it, if any, must be under the contract between the company and the defendant. That contract contains not one word of grant; not one word that would enable the defendant to maintain an action for the possession of the road-bed or any part of it, or which would justify the carrying away or converting a particle of it to his use. It sounds entirely in covenant. It would justify a peaceable entry for the performance of the covenant until notice to the contrary; but if the company had, from the signing of the contract, prevented the defendant from entering, it will hardly be pretended that he could have maintained an action for the possession of the road-bed, to enable him to perform his contract. It is at best a naked license, and as such revocable. *Chyno-*

*weth v. Tenney*, 10 Wis., 397, and cases there cited. It was revoked by the action of the company; and any subsequent interference on the part of the defendant or the plaintiffs would be a trespass. *Wood v. Leadbitter*, 13 M. & W., 838, and cases there cited. Nor do the plaintiffs stand in the situation of one who has covenanted to do what he is unable to do. By the contract the defendant is to furnish them the right of way. And the furnishing such right of way was evidently a condition precedent to constructing the road. Again, all the work agreed by the plaintiffs to be done, was to be done to the satisfaction and acceptance of the engineer of the company. The plaintiffs were to be paid only upon the estimates of the engineer of the company. All the work is to be done according to the directions of said engineer. He might even declare the contract void. The engineer of the company was by the contracts the only engineer to do this, and the defendant took the burthen of procuring that engineer to act. That engineer directed the plaintiffs to cease work; informed them that he would not superintend or lay out more work or estimate any more work done, and backed that declaration by the authority of the board of directors by whom he was employed. It is the misfortune of the defendant that the contract provided that a man entirely independent of himself, but entirely dependent upon the corporation—removable by it—should have all the control of the work to be done by the plaintiffs. It was part of the notice given to the plaintiffs to stop work, that the company was acting in hostility to the defendant. So that when the company directed no more engineering done, no more work done, no more estimates made, no more could be done that would answer the conditions of the contract. 2. The court did not err in excluding proof of the counterclaim. The contract expressly provides the remedy for a breach of it, and the language excludes every other remedy. It is " for a failure to complete the work contracted to be

done," &c., that the defendant was at liberty to resort to certain remedies there named.

*By the Court,* COLE, J. It will be convenient for us to consider the two main points in this case in the inverse order from that in which they were presented by counsel on the argument.

It appears from the record that the defendant below—appellant here—on the trial, called witnesses to prove his counter-claim set up in the answer, and offered to show the damages which he had sustained in consequence of the breach of the contract on the part of the plaintiffs. This testimony was objected to and excluded, on the ground, as stated in the bill of exceptions, that by the contract between the parties the only consequence of a breach thereof on the part of the plaintiffs was to give the right to the defendant either to declare the contract at an end, or to employ men for the completion of the work at the plaintiffs' expense; and that no damages for a breach of the contract by them were recoverable as an offset to their claim. In other words, because the contract expressly provides "in case it shall appear to the said engineer that the work is not progressing with sufficient rapidity to insure its completion within the specified time, then said party of the second part may employ other or additional help to hasten the completion of the work, and the expense of such help shall be paid by the said party of the first part to the said party of the second part, or the said engineer may in such case determine that the contract has been abandoned by the said party of the first part," &c.—in consequence of the contract containing these provisions, all other remedies for a breach thereof were necessarily waived by the defendant. The question therefore presented is, is this the correct construction of the contract, and has the defendant only the right to terminate the contract or complete it at the plaintiffs' expense, without the right to resort to the usual remedies for its non-performance; or

may he recover, by way of counter-claim, any damages which resulted to him from the breach thereof on the part of the plaintiffs?

According to our view there is nothing whatever in the contract which, upon any fair construction, can be said to deprive the defendant of the right to claim and recover any damages which he may have sustained by a breach of its provisions on the part of the plaintiffs. The reservation of the power to amend the contract, if the work was not progressing with sufficient rapidity, or to put men on to complete it at the expense of the plaintiffs, cannot have the effect of destroying this right. Such provisions are common in this class of contracts, and are obviously inserted to secure the prompt completion of the work in a case where perhaps such completion might be of the greatest possible importance. They have not been construed as having the effect of depriving the party in whose favor they are made, of the liberty of resorting to the usual legal remedies for a breach of the contract; and we see no good reason for saying such an effect should be given them. We therefore deem the position untenable, that because the contract secured to the defendant the power to put an end to it whenever the engineer was dissatisfied with the progress of the work, or to employ men to complete it at the plaintiffs' expense, this is exclusive of all other remedies, and bars the defendant from all right to claim damages for any breach of the contract. It follows from this that the circuit court erred in not permitting the defendant to prove the counter-claim set up in the answer. The contract likewise provided that monthly estimates of the work done and materials furnished by the plaintiffs should be made by the engineer as the work progressed, and that eighty-five per cent. of these estimates should be paid by the defendant in the manner therein provided. It was further agreed and stipulated that the remaining fifteen per cent. on the estimates should be retained by the defendant until the contract was completed and accepted by the engineer.

We regard this fifteen per cent. as a fund in the hands of the defendant to indemnify him against any damages which he might sustain on account of the breach of the contract by the plaintiffs. Such being the object of the retention of this fund, the defendant should of course apply upon his damages this fifteen per cent. retained by him, and only have judgment for any excess of damages, if any were found due him.

The question arising on the other branch of the case is, could the plaintiffs recover the fifteen per cent. which the defendant was authorized to retain until the completion of the work, without showing a performance of the contract, or an excuse for non-performance? This claim of the fifteen per cent. constitutes one of the principal causes of action on the part of the plaintiffs; and it is claimed that, under the facts of the case, they were entitled to recover it. This claim is controverted on the part of the defendant, who insists that to entitle the plaintiffs to recover it they must show that they have performed the contract according to its terms, or were excused under the circumstances from a strict performance. This position seems to us incontestable. We have already stated that according to our view this fifteen per cent. was a fund in the hands of the defendant to indemnify him against any damage which he might sustain in consequence of a non-performance of the contract by the plaintiffs, and to secure the due completion of the work. This appears to us to be the manifest object of retaining this per centage of the estimates. The language of the contract upon this point, after providing for the time and manner of paying the eighty-five per cent., is as follows: "The remaining fifteen per cent. to be retained until the contract is completed and accepted by the engineer." This language shows, we think, that this fifteen per cent. is not to be regarded as in the nature of liquidated damages for a breach of the contract, but rather as a penalty or fund to insure the proper completion of the work. The counsel for the appellant referred us to a class of cases where it had been held, on

Jackson et al. vs. Cleveland.

analogous provisions in contracts, that the per centum retained was intended as liquidated damages on failure to perform the work according to the agreement; but it will be found that there were features in those contracts which distinguish them from the one we are considering. But it is very clear that unless the plaintiffs perform their contract as they agreed to do, or show some valid excuse for not performing it, they cannot recover this fifteen per cent. This is in accordance with the stipulation of the parties, and in strict harmony with many well adjudicated cases upon the precise point. See *Danville Bridge Company v. Pomroy et al.*, 15 Penn. St., 151; *Faunce v. Burke et al.*, 16 id., 469; *Easton v. The Penn. and Ohio Canal Co.*, 15 Ohio, 79; *Hennessey v. Farrell et al.*, 4 Cushing, 269; Redfield on Railways, section 8, p. 199.

It follows from these views, that the circuit court certainly erred in refusing to give the first, third and fourth special instructions asked by the defendant. The court likewise erred in giving the sixth instruction contained in the general charge. The principle involved in the first and third instructions is, in substance, that if the plaintiffs, without any default of the defendant under the contract, abandoned the work and failed to perform it as they had agreed to do, then they cannot recover the fifteen per cent. which was payable only on the completion and acceptance of the work. We have no doubt but this is a correct proposition of law, and it was strictly applicable to the facts and issues in the case. The conflict between the sixth instruction given and the remarks above made, as well as the conflict between such instruction and the fourth refused, will be apparent at a glance.

The judgment of the circuit court must be reversed, and a new trial ordered.