# CASES

DECIDED IN THE

# SUPREME· COURT OF GEORGIA

AT THE

## OCTOBER TERM, 1900.

### FLORIDA NORTHERN RAILROAD COMPANY *et al. v.* SOUTHERN SUPPLY COMPANY.

1. When in a contract for the construction of a given work it was stipulated that it was to be completed by a designated date, time as to this matter being of the essence of the contract, and that "the failure on the part of [the contractor], the [other party] having faithfully kept and performed all of [his] covenants, to complete the same in the time specified may be considered sufficient reason for the forfeiture of " five per cent. of the contract price: *Held,* that even if the agreement respecting forfeiture be treated as a stipulation for liquidated damages reasonable as to amount, and not for a penalty, the party for whom the work was done was not entitled to retain the five per cent. as such damages if he on his part failed to duly keep and perform his covenants as set forth in the contract.

2. A stipulation in such a contract that if delays in the completion of the work should be "occasioned by epidemics, strikes, or providential causes, a reasonable extension of time for the completion of this contract shall be made," when qualified by the condition that "timely notice of all such delays shall be given " by the contractor to the other party, did not proprio vigore operate to relieve the former from liability for damages resulting to the latter because of delays thus brought about; but under such a contract it was incumbent upon the contractor to give actual notice to the other party of such delays within a reasonable time after their occurrence, and make thereon proper claims for extensions of time. Failing in these respects, the consequences of such delays were chargeable to him to the same extent as if they had been occasioned by his own fault or negligence. The error dealt with in this note is corrected by an appropriate direction.

3. Where the work constituting the subject-matter of such a contract was the construction of a railroad, and it was not completed until after the lapse of two months from the date fixed by the contract, the railroad company, even if entitled to damages arising from loss of profits during these two months, could not prove the amount of such loss by showing what were its profits during the corresponding months of the next ensuing year.

4. The material questions of law involved in the present case are disposed of by the preceding notes. As to the issues of fact, no sufficient reason for disturbing the findings of the auditor, or the verdict sustaining the same, appears.

Argued July 17, — Decided October 26, 1900.

Exceptions to auditor's report. Before Judge Falligant. Chatham superior court. December term, 1899.

*Denmark, Adams & Freeman,* for plaintiffs in error.

*Garrard, Meldrim & Newman* and *Jacob Gazan,* contra.

LEWIS, J. The Southern Supply Company, hereinafter referred to as the "contractor," contracted with the Florida Northern Railroad Company and the Florida Central and Peninsular Railroad Company, both of which for convenience will hereinafter be indicated by the collective term "railroad company," for the construction of a line of railroad. Under the contract as originally agreed upon, the road was to be completed by September 15, 1893. Subsequently the time was extended to November 1st of that year. In point of fact it was not finished till about January 1, 1894. The contract provided that the railroad company should make monthly payments to the contractor upon estimates furnished by the engineer in charge, such payments to cover ninety-five per cent. of the value of the work actually done, and upon its completion a final estimate was to be made and a full settlement had. The contract, after specifying the date by which the railroad was to be finished, and reciting that it was "expressly agreed that the time herein stipulated shall be of the essence of this contract," further provided as follows: "And the failure on the part of [the contractor], the [railroad company] having faithfully kept and performed all of [its] covenants, to complete the same in the time specified may be considered sufficient reason for the forfeiture of the reserved five per cent.; and the [contractor] hereby consents and agrees to this condition. Should, however, delays in the performance and completion of the work to be done by the [contractor] hereunder within the time herein be occasioned by epidemics, strikes, or providential causes, a reasonable extension of time for the completion of this contract shall be made. Timely notice of all such delays shall be given" by the contractor to the railroad company. After the railroad had been finished and turned over to the railroad company, the contractor brought against it an action for the recovery

of a balance alleged to be due upon the contract, and for the enforcement of a lien upon the railroad. An answer denying all liability, and claiming a balance from the plaintiff, was filed, and the case was referred to Mr. W. W. Mackall as auditor, who made a report of the evidence introduced before him, and of his findings of fact and conclusions of law thereon. To this report the railroad company filed numerous exceptions of law and fact. All of the former were overruled by the presiding judge. Certain of the latter were submitted to a jury, who sustained the auditor throughout; and a judgment following their verdict was entered in favor of the contractor. The case is here upon exceptions to the order overruling its exceptions of law to the auditor's report, and to a judgment refusing to grant a new trial. The record is necessarily voluminous, but we are much indebted to the able counsel on both sides for their conscientious and successful efforts to eliminate from it irrelevant matter. Quite a number of questions are presented by the bill of exceptions; but in the view we take of the case, it turns upon the legal propositions laid down in the headnotes. These we will briefly discuss, stating in connection with what is said concerning each such facts necessary to an understanding of our rulings as have not already been mentioned. Before dealing specifically with the points involved, we think it entirely proper to remark that both the auditor and the judge handled this complicated case with rare skill and ability. Save as to a single matter, which will be taken up in its order, we are entirely satisfied with the accurate and admirable manner in which their work was done.

1. The auditor, upon sufficient testimony, found that one half of the delay in finishing the railroad by the day agreed upon was due to the fault of the contractor, and one fourth to the fault of the railroad company. He thereupon held, and the judge sustained him in so doing, that the company was not entitled to deduct from the contract price the five per cent. reserve, which amounted to about $35,000.00. This, in our judgment, was correct. We may for the purposes of this case assume, without, however, so deciding, that the agreement respecting forfeiture could be treated as a stipulation for liquidated damages reasonable as to amount, and not for a mere penalty. Conceding to the railroad company all the benefits of this assumption, we are nevertheless firmly of the opinion that it could not retain the five per cent. as such damages. It certainly

could not do so outside of the contract, and it could not, under the facts as found by the auditor, do so within the contract. By the express terms of the written instrument the right of the railroad company to demand the forfeiture was conditioned upon its faithfully keeping and performing its covenants. This it failed to do; for, as has been seen, a considerable portion of the delay in completing the railroad was attributable to its fault. It makes no difference that the contractor was responsible for a greater portion of the delay. In any view of the contract, the right of the railroad company to arbitrarily hold back $35,000 of the price to be paid to the contractor was a purely technical one, having nothing to support it but the literal terms of the writing. We are unable to perceive upon what principle of law or justice the company could demand absolute, strict compliance on the part of the contractor without itself coming up to the letter of the agreement. It stipulated for a five per cent. forfeiture on condition that it faithfully kept and performed its own covenants. It did not meet the requirements of this condition, and its failure to do so resulted in delay, the very thing which was to bring about the forfeiture. It is true that the contract does contain a stipulation that the contractor "shall be entitled to no damage from delays which may be occasioned by the" railroad company, "but for such delays a reasonable extension of the time for the completion of this contract shall be made"; but obviously this provision in the agreement can not fairly be invoked by the railroad company as having any bearing upon its right to claim the five per cent. forfeiture. Indeed it has no relation to that matter. An exemption of the railroad company from liability for actual damages to the contractor, occasioned by delays for which the company was responsible, could not reasonably be held to entitle it to a forfeiture the right to demand which was expressly dependent upon its keeping in all respects its own covenants. While it might escape paying damages for causing delays, it could not cause them and still obtain the benefit of another and distinct stipulation in the contract which practically required that it should be faultless in order to be entitled to such benefit.

2. That the railroad company was entitled to set off against the contractor's demand such damages as were actually occasioned to the former by any delay in completing the railroad with which the latter was fairly chargeable can not, of course, be questioned. Ac-,

cording to the auditor's report, one fourth of the entire delay in the present instance was due to an epidemic of yellow fever, and to unusual rains and storms. He thereupon attributed this portion of the delay to what he termed "unavoidable causes," and held, as matter of law, that the contractor was not responsible for the consequences thereof. This ruling was sustained by the judge, and as a result the contractor was not debited with an item amounting to $2,406.50, with which it is properly chargeable if so much of the delay as was due to the causes last mentioned is to be counted against it. The second headnote sets out so much of the contract as relates to this matter. The auditor and the judge were of the opinion that such notorious things as the epidemic, floods, and storms were necessarily known to the railroad company, and that consequently it had, without more, the "timely notice" thereof which the contract required should be "given" to it. In this view we are unable to concur. We think the contract plainly meant that, in case of delays arising from such causes, it was incumbent upon the contractor to give actual notice thereof to the railroad company within a reasonable time after the delays occurred and make demands for proper extensions of time, or that, failing so to do, the contractor would be chargeable with the consequences of such delays. Otherwise, the whole matter would be left in an indefinite and undetermined condition, which we do not think was contemplated by the parties. The railroad company could not know that extensions would be claimed unless they were demanded, and certainly a stipulation that "timely notice" shall be "given" is not met by giving no notice at all, nor by the fact that the party to be notified must in the nature of things have known of the occurrence of certain events. There is no contention that the contractor gave any notice to the railroad company of delays occasioned by providential causes, or because thereof asked for extensions of time. We therefore hold that the plaintiff's recovery should have been $2,406.50 less than it was, and have directed that the judgment below be corrected accordingly.

3. It was insisted by the railroad company, both in the trial court and here, that it was entitled to set off against the plaintiff's demand certain damages arising from loss of profits which it would have realized during the months of November and December, 1893, if the railroad had been completed by the first day of the former

month, as agreed.   Without stopping to inquire whether or not such damages were in contemplation when the contract was made or were covered by its terms, it is enough to say that there was no evidence affording any reasonable basis upon which to compute damages of this character.   The railroad company sought to furnish such a basis by showing what were its profits during the corresponding months of 1894.   We agree with the auditor and the judge in holding that such a method was not legitimate.   What amount of business would have been done upon a new railroad during the first two months of its existence had the operation of it been begun two months earlier than was actually the case, and what, if anything, would have been its net earnings during that period, can not be arrived at by ascertaining the results of operating it during the last two months of the first year it was run.   The conditions and surroundings for those two months would in almost every case, certainly in one like the present, be so different from those prevailing at the beginning of the road's business career, that figures relating to such months would at best afford no more than a basis for mere conjecture as to what results would have been obtained a year sooner.   Conceding, for argument's sake, that the railroad company was entitled to compensation for lost profits, it could not have the same allowed without furnishing better proof than it did in this case for arriving at the amount of the same.

4.   We have covered all the material questions that are presented in the record.   As to the disputed issues of fact, we find that the auditor's conclusions thereon, and the verdict of the jury sustaining the same, were too well supported by testimony to warrant any interference by this court.   One of these issues related to an allowance to the plaintiff of the price of certain cross-ties.   The railroad company contended that they were not actually furnished, but there was sufficient evidence to warrant a finding that they were, or at least that the company by its acts authorized the contractor to pay a subcontractor for them.   The only remaining issue which need be noticed related to an allowance to the contractor of ten per cent. upon the cost of certain buildings.   The original contract, as modified by a subsequent agreement, warranted this allowance, and the evidence fully justified the auditor in finding that the contractor was entitled to it.

*Judgment affirmed, with direction.    All the Justices concurring.*