(December 28, 1905.)

## HUBER v. ST. JOSEPH'S HOSPITAL.

[83 Pac. 768.]

BUILDING CONTRACTS—EVIDENCE—ARCHITECT AGENT OF OWNER—EXTENSION OF TIME—APPLICATION FOR IN WRITING—WAIVER—FINAL CERTIFICATE—ARBITRATION.

1. In a building contract where it is stipulated that no allowance for delay in the completion of the building shall be made unless a claim therefor is presented in writing within twenty-four hours after the occurrence of such delay, where all delays are occasioned by the architect, who is the agent of the owner, and he leads the contractors to believe that the required extension of time will be given without an application in writing therefor, held that the application in writing is waived, and the owner is not entitled to any deductions from the contract price because of such delays.

2. It was error for the court to reject any testimony offered, showing that the owner by her own acts or the acts of her agent, had waived the stipulation in the contract requiring a written application for an extension of time.

3. Under the contracts in question, the final certificate or estimate of the architect was not conclusive on the appellants.

4. Under the provisions of section 3229 of the Revised Statutes, the stipulation in a contract by which any party thereto is restricted from enforcing his right under the contract by the usual proceedings in the ordinary tribunals of the state is void.

(Syllabus by the court.)

APPEAL from the District Court of Nez Perce County. Honorable Edgar C. Steele, Judge.

Action to foreclose a mechanic's lien. Judgment for plaintiffs. Plaintiffs appealed. Judgment reversed.

The facts are stated in the opinion.

George W. Tannahill, for Appellants.

The rule that parol evidence cannot be received to contradict, add to or modify or explain a written contract is not applicable where a modification or change is alleged subsequent to the execution of the writing. This has been laid down clearly and universally. (1 Greenleaf on Evidence, Redfield's ed., 352; *McCauley v. Keller*, 130 Pa. St. 53, 17 Am. St. Rep. 758, 18 Atl. 607; *Bannon v. Aultman*, 80 Wis. 307, 27 Am. St. Rep. 37, 49 N. W. 967; *Davis v. Crookston Water Works Co.*, 57 Minn. 402, 47 Am. St. Rep. 622, 59 N. W. 482; *Harris v. Murphy*, 119 N. C. 34, 56 Am. St. Rep. 656, 25 S. E. 972, 34 L. R. A. 803; *Emmerson v. Slater*, 22 How. 28, 16 L. ed. 360; *DeBoom v. Priestly*, 1 Cal. 206, and cases cited in note; *McFadden v. O'Donnell*, 18 Cal. 160.) Where an architect also acted as the owner's superintendent of the work, and, on the contractors complaining to him of delays caused by other contractors, the superintendent assured him that he was entitled to additional time therefor, and conceded the entire amount of time demanded, the fact that no demand for additional time was made on the architect in writing was immaterial. (*Vanderhoof v. Shell* 42 Or. 578, 72 Pac. 126.) A stipulation in a building contract as originally made that the contractor should make no claim for additional work, unless the same was done under order from the architect, and such claim be made in writing, did not apply to work done pursuant to alterations made in the contract by subsequent agreement of the parties. (*Wilkins v. Wilkerson* (Tex. Civ. App.), 41 S. W. 178; *Crowley v. United States Fidelity & G. Co.*, 29 Wash. 268, 69 Pac. 784; *Barilari v. Ferrea*, 59 Cal. 1.) "An innocent con-

tractor should not be made to suffer. . . . . If the defendants themselves, through their agents, rendered it impossible for the claimant to perform his engagement, he ought not to be visited with the penalty of nonperformance." (*Peck v. United States,* 102 U. S. 64-66, 26 L. ed. 46; *Vanderhoof v. Shell,* 42 Or. 578, 72 Pac. 126; Phillips on Mechanics' Liens, sec. 147, p. 255; *Wilkens v. Wilkenson* (Tex. Civ. App.), 41 S. W. 178; *Atkinson v. Woodmansee,* 68 Kan. 71, ·74 Pac. 640, 64 L. R. A. 325; *Erskine v. Johnson,* 23 Neb. 261, 36 N. W. 510; *O'Keefe v. Corporation of St. Francis Church,* 59 Conn. 551, 22 Atl. 327.) "Where an architect's certificate is refused in bad faith, recovery may be had without it." (*Perry v. Levenson,* 82 App. Div. (N. Y.) 94, 81 N. Y. Supp. 586; *Vanderhoof v. Shell,* 42 Or. 578, 72 Pac. 126.) "This certificate [the architect's] is conclusive of the rights of all parties concerned, unless it can be shown that it was obtained by the owner by collusion or fraud." (*Dingley v. Green,* 54 Cal. 333; *Hot Springs R. Co. v. Maher,* 48 Ark. 522, 3 S. W. 639; *Moore v. Kerr,* 65 Cal. 519, 4 Pac. 542.)

Charles L. McDonald, for Respondents.

"If the action is on a special contract, proof of a substantial compliance with the terms of the entire instrument must be offered to entitle the builder to recover." (*Blythe v. Poultney,* 31 Cal. 233; *Coburn v. Hartford,* 38 Conn. 290; *Graham v. Trimmer,* 6 Kan. 230; *Cunningham v. Jones,* 20 N. Y. 486; *Jackson v. Cleveland,* 19 Wis. 400; *McNeil v. Armstrong,* 81 Fed. 943, 27 C. C. A. 16; *Florida N. R. R. Co. v. Southern Supply Co.,* 112 Ga. 1, 37 S. E. 130.) "Where parties capable of contracting have deliberately entered into a written agreement in which by all just rules of construction the certificate of the architect is made a condition precedent to a right, such condition must be performed." (*Hanley v. Walker,* 79 Mich. 607, 45 N. W. 59, 8 L. R. A. 207; *Tetz v. Butterfield,* 54 Wis. 242, 41 Am. Rep. 29, 11 N. W. 531; *Stose v. Heissler,* 120 Ill. 433, 11 N.· E. 161,

60 Am. Rep. 563; *Holmes v. Richet,* 56 Cal. 307, 38 Am.
Rep. 54; *Scammon v. Denio,* 72 Cal. 343, 14 Pac. 98; *Tally
v. Parsons,* 131 Cal. 516, 63 Pac. 833; *Myers v. Pacific Con-
struction Co.,* 20 Or. 603, 27 Pac. 584; *United States v. Ellis,*
2 Ariz. 253, 14 Pac. 300.) "The only grounds upon which
a certificate, estimate or determination or decision may be
impeached are fraud, or such gross mistakes as would imply
bad faith, or a failure to exercise an honest judgment."
(*Dingley v. Green,* 54 Cal. 333; *Moore v. Kerr,* 65 Cal. 519,
4 Pac. 542; *United States v. Walsh,* 108 Fed. 502; *Brownell
Imp. Co. v. Critchfield,* 197 Ill. 61, 64 N. E. 332; *Eldridge
v. Fuhr,* 59 Mo. App. 44.) "To constitute sufficient fraud
to avoid a decision, the architect or other person whose de-
cision is impeached must have knowingly and willfully dis-
regarded his duty." (*Gilmore v. Courtney,* 158 Ill. 432, 41
N. E. 1023; *Snell v. Brown,* 71 Ill. 133.) "Mere mistake
or error of judgment form no grounds for impeachment."
(*Whiteman v. New York,* 21 Hun, 117; *McAlpine v. St.
Clair Female Academy,* 101 Wis. 468, 78 N. W. 173; *Mit-
chell v. Daugherty,* 86 Fed. 859.) "In alleging fraud it is
well settled, both in law and in equity, that the mere general
averment without setting out the facts upon which the charge
is predicated, is insufficient." (9 Ency. of Pl. & Pr. *686,
and numerous cases there cited.) "In alleging fraud, it
will not suffice to say that the parties fraudulently procured
or induced or fraudulently did this or that, or that he com-
mitted or was guilty of fraud. The facts which constitute
the fraud must be stated." (Bliss on Code Pleading, sec.
211.) "In pleading fraud, the facts constituting the fraud
must be specifically set forth." (*People v. Healey,* 128 Ill.
9, 15 Am. St. Rep. 90, 20 N. E. 692; *Bickle v. Irvine,* 9 Mont.
251, 23 Pac. 244; *Conant v. National State Bank,* 121 Ind.
324, 22 N. E. 250; *Woodroof v. Howes,* 88 Cal. 184, 26 Pac.
111; *Albertoli v. Branham,* 80 Cal. 631, 13 Am. St. Rep. 200,
22 Pac. 404; *Kerr v. Steman,* 72 Iowa, 241, 33 N. W. 654.)
"A plaintiff cannot plead performance and recover under
proof of waiver of performance." (4 Ency. of Pl. & Pr.
631.) "In an action on a contract, a party cannot under

an allegation of performance prove facts in excuse of performance." (*Mackey v. Swartz*, 60 Iowa, 710, 15 N. W. 577.) "If the allegations be of full performance, proof of a waiver and modified performance is inadmissible and the error of receiving it against objection cannot be cured by permitting amendment of the allegation on motion for new trial." (*Trumbridge v. Read*, 51 Hun, 644, 3 N. Y. Supp. 908.) "An averment of performance is not supported by proof of waiver of performance." (*McDermott v. Grimm*, 4 Colo. App. 39, 34 Pac. 909; *Britton v. Turner*, 6 N. H. 481, 26 Am. Dec. 713; Pomeroy's Remedies and Remedial Rights, sec. 554.) "The plaintiff cannot show a waiver of performance or a modification of any part of a contract without alleging it." (9 Cyc. 727.) "Under an allegation of performance, an excuse for nonperformance is not admissible in evidence, nor can a defendant show a reason for nonperformance under a plea of covenants performed, as it negatives instead of supports the issue." (*Fauble v. Davis*, 48 Iowa, 462; *Stone v. Dennis*, 3 Port. (Ala.) 231; *Cherry v. Newby*, 11 Tex. 457.)

SULLIVAN, J.—This action was brought to foreclose two liens for a balance of about $2,000 claimed to be due for the erection of a hospital, and power-house in connection therewith, at the city of Lewiston. It appears from the record that on May 6, 1902, the appellants entered into a contract whereby they agreed, for the consideration of a certain sum therein mentioned, to furnish certain of the materials for and erect, according to the plans and specifications furnished by the architect, said hospital building, and agreed to fully complete and have the same ready for occupancy by October 1, 1902; that another contract was entered into by the appellants on the 14th of October, 1902, whereby they agreed to erect a building to be used as a power-house in connection with said hospital building, which building they agreed to fully complete and have ready for occupancy by December 25, 1902. Said contracts are set forth in the record.

A stated sum is fixed as liquidated damages for the non-completion of the buildings within the time provided for in the contract; on the hospital building, $10 per day, and on the power-house, $15 per day were the sums agreed upon as liquidated damages. It is also stipulated that the work should be done under the direction and superintendency of the architect, who was the agent of the owner, and that all payments must be certified by him, and that the time for the completion of the work was to be extended only when written application for such extension was made to the architect within twenty-four hours after the happening of the event which would warrant the demand for such extension. All extensions were to be certified by the architect. Said contracts also provide that in the event of disagreement between the architect and the contractors as to the extension of the time for the completion of the work, or the amount to be allowed for extra work, the matter was to be submitted to arbitration in the manner prescribed in the contract. The appellants allege in their complaint a full compliance with all the terms and conditions of the contract on their part. They also allege that they did not complete either structure within the time provided in the contract, but that they applied to defendants and to defendants' architect for an extension of time under the terms of said contract, and that defendants and said architect extended the time for the completion of said buildings under the terms and conditions of the contract. Appellants allege the performance of extra work, and claim compensation for the same. Liens were filed by appellants on both buildings, and this action was brought to foreclose them. Judgment is prayed for in a sum aggregating $1,900, together with interest, costs and attorney's fee.

Respondents in their answer admit the execution of the contracts, and the allegations that the buildings were not completed within the time provided therein, but deny that the time for the completion of the building was ever extended under the terms of the contract or otherwise, and claim as an offset or counterclaim, the amount as provided

for in the contract as liquidated damages.   Upon the issues
thus made, the action was tried by the court without a jury.
The court found that there was due to the plaintiffs the sum
of $257.83, with interest thereon from February 9, 1903, and
an attorney's fee of $100 and costs of suit, and ordered the
foreclosure of said liens for that amount.   A motion was
made for a new trial by the plaintiffs and denied.   This ap-
peal is from the judgment and the order denying a new
trial.   Numerous errors are assigned and a reversal of said
order and judgment is demanded.

Many of the errors assigned go to the rejection of certain
testimony offered by the appellants, which testimony showed
that the architect, who was the agent of the owner, made
frequent changes in the plans of the hospital building, which
changes occasioned all of the delays in the completion of
that building at the time specified for its completion in the
contract.   The trial court evidently rejected this testimony
on the theory that the appellants were not entitled to any
extension of time, unless they made application for it in
writing within twenty-four hours after it was known that
an extension would be required.   The architect changed his
plans many times and ordered changes made in the building
to conform thereto.   He stated to the appellants in the pres-
ence of others that the matter would be made right, giving
them to understand that when changes were made by him
which delayed the completion of the building, proper ex-
tensions of time would be made.   Under the contract the
hospital building was to have been completed by the 1st of
October, and it is shown that it was not completed or was not
accepted until the ninth day of February following.   The
time between and including those two dates would make one
hundred thirty-two days, and it is shown that the combined
delays occasioned by the owner and architect amounted to
more than that number of days.   One delay of six weeks
was caused by reason of the failure of the owner to pay the
fourth estimate, as provided by the contract.   Another delay
.was occasioned by reason of the owner's failure to furnish
the hardware which she was to furnish; another by failure

of the owner to have the boiler set in the power-house; another by a change in the elevator shaft; a change in steam-fitting; contractors waiting under the order of the architect for the plastering to dry and for certain painting to be done; a change in the floor; a drop in the platform; additional shelving; cutting certain holes in the walls of the basement and putting in ventilators; cutting through floors of basement for pipes, and the excavation of the basement for foundation two or three feet lower than was called for by the original plans. All of those changes which were occasioned and directed to be made by the architect delayed the completion of the building. The delays amounted in all to one hundred and thirty-two days from and including the first day of October to the ninth day of February following, when the building was accepted. The architect claims that he gave the contractors an extension of time of sixty-six days, but he must have been mistaken in this, as according to one of his estimates he has charged up to the contractors thirty days' delay at $15 per day on the power-house, and one hundred and six days' delay at $10 per day on the hospital building, making a total of one hundred and thirty-six days, amounting to $1,510 for delays. It is clear to us from the testimony that the architect did not do his duty in the matter and has not acted fairly with the contractors. Counsel for the appellants testified that he saw the architect and talked with him about the matter, and the architect said, among other things: "Yes, they [the contractors] have got a splendid building and it is all right, and they ought to have their money, every cent of it; they are entitled to it' and they should have it, but the owner is stubborn and she won't permit me to settle a cent of it, and I am going to abide by her orders and will do what she says." And again the witness testified he asked the architect: "Why don't you settle this and give the boys their money?" and he answered, "I would like to, but the owner is headstrong and won't do anything of the kind." The architect testified on the trial and denied none of that testimony.

When we take into consideration all of the evidence of-
fered, rejected and admitted, and that provision of the con-
tract whereby the owner agrees to provide all labor and ma-
terial for the construction of the building not included in
the contract in such manner as not to delay the progress of
the building, and that all delays were occasioned by changes
made by the owner's architect in his plans, and by the
failure of the owner to comply with her part of the con-
tract, I conclude that the court erred in not admitting all
evidence offered tending to establish the fact that the owner
had waived that provision of the contract requiring the con-
tractors to make application in writing for an extension of
time. As before stated, the evidence offered and that intro-
duced clearly shows that there was a waiver of that provi-
sion of the contract requiring the contractors to present their
application in writing for an extension of time. And under
the facts it would be unjust to permit the owner to take ad-
vantage of the acts of her agent by leading the contractors
to believe that an application in writing for an extension of
time would not be required, and thus be relieved of an ob-
ligation to pay more than $1,500—which she would have
been required to pay under the contract if the application
for extensions of time had been made in writing.

The contract referred to contains a provision that in case
of a disagreement in regard to the valuation of the work
added or omitted, or in case of a disagreement as to the
extension of time or as to the amount of loss or damage to
either party, such matters ''shall be referred to three disin-
terested arbitrators, one to be appointed by each of the par-
ties to this contract, and the third by the two thus chosen;
the decision of any two of whom shall be final and binding.''
It is contended by counsel for respondents that in the mat-
ters referred to and agreed to be submitted to arbitration,
the right of action did not accrue until after a submission of
such matters to arbitrators, as provided in said contract, and
that this action was prematurely brought as such matters
had not been submitted to arbitration. It will be observed
from the stipulation of the contract above quoted that it
is agreed that the parties thereto shall submit their questions

of difference to arbitrators, and that the arbitrators' decision shall be final. That provision of the contract is in direct conflict with the provisions of section 3229 of the Revised Statutes of Idaho. Said section is as follows: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

We are aware that it has been held in many states that a stipulation in a contract to submit differences arising thereunder to arbitration is valid, and that neither party can appeal to the court without previous tender of arbitration and a refusal by the other. But those cases, as we understand them, are not applicable to the case under consideration. In this case they have stipulated to submit certain matters to arbitration, and have also stipulated that the decision of such arbitrators should be final, which they could not legally do under the provisions of the said section 3229. Taking those provisions of the contract together, they are repugnant to the provisions of said section 3229, and we are not prepared to say that the parties would have agreed to arbitrate said matters, provided the last clause of said stipulation had been left out, to wit, "the decision of any two of whom [arbitrators] shall be final and binding." We here pass upon that stipulation as it appears in the contract. We do not hold that a valid contract to arbitrate could not be made, but that such stipulation cannot make the award of the arbitrators final. From the entire record we conclude that the respondents are not entitled to any deduction from the contract price of the said buildings, because of the failure to have them completed within the time specified in the contracts, as the delays were occasioned by the owner and her agent, and by their acts they waived the application in writing for an extension of time, and the appellants are entitled to recover the reasonable value of extra work done by them, occasioned by the change of the plans of said buildings, and done under the direction of the architect.

The judgment is reversed and a new trial granted, or if either party does not care to introduce other testimony, the court may make findings of fact, conclusions of law and enter judgment in accordance with the views herein expressed. Costs are awarded to appellant.

Stockslager, C. J., and Ailshie, J., concur.

### ON PETITION FOR REHEARING.

#### (January 23, 1906.)

AILSHIE, J.—The petition for rehearing urges that the opinion of the court amounts to a holding that "where delays are occasioned by reason of extra work ordered done by the owner or architect, this of itself waives the provision in the contract fixing the time for the completion of the building." Such is not the holding of the court, and we fail to find anything in the opinion that leaves it open to the construction respondent suggests. We hold that the facts of this case show that the owner and its agent have by their actions and conduct in these transactions waived the requirement that applications for extensions be made in writing within twenty-four hours after the happening of the event which demands the extension. We also hold that evidence tending to establish the fact of waiver was admissible. Delays in construction of a building caused by the owner or architect do not necessarily, of themselves, constitute a waiver of any part of the contract to be complied with by the contractor. They may subject the owner to liabilities for a breach of the contract and under the peculiar circumstances of the particular case, such as the one at bar, tend to establish the fact of a waiver.

The petition for a rehearing will be denied, and it is so offered.

Stockslager, C. J., and Sullivan, J., concur.