Decided 20 April ; rehearing denied 3 August, 1903.

## VANDERHOOF *v.* SHELL.

[72 Pac. 126.]

BUILDING CONTRACT—WAIVING ARCHITECT'S FINAL CERTIFICATE.

1. Where an architect, who was also superintendent, with power to reject work and materials, examined the work as it progressed, making corrections of errors and accepting and rejecting materials as the occasion required, his authority being recognized by the contractor, and thereafter the owner, architect, and contractor agreed to the acceptance of the building, with the exception of certain alterations, the requirement of the architect's final certificate, as a condition to the contractor's right to sue for his final payment, was waived.

PLEADING WAIVER OF ARCHITECT'S FINAL CERTIFICATE.

2. Where a complaint in an action on a building contract to recover the contractor's final payment alleged facts showing that plaintiff was entitled to an architect's final certificate, which he had demanded and had been refused, it was sufficient to justify the admission of evidence showing that such certificate had been refused at the instance of the owner.

EVIDENCE OF ACCEPTANCE OF A BUILDING.

3. Where, on completion of a building, the keys were delivered to the owner, who went into possession on the understanding that he accepted the building, except a list of alterations then agreed on, which were subsequently performed by the contractor to the satisfaction of the architect, such delivery of the building constituted an unequivocal acceptance of the work.

BUILDING CONTRACT—EXTENSION OF TIME.

4. Under a building contract providing that no additional time should be allowed for extra work unless the amount thereof should be fixed at the time of making the change, claims for extensions by reason of changing the plans cannot be allowed unless the additional time was agreed upon when the changes were ordered.

ALLOWANCE OF TIME FOR CHANGE OF PLANS.

5. Where delays in the performance of a building contract were occasioned by the owner's change in the plastering from mortar to adamant, by which the contractor was relieved from the plastering, and the owner contracted with others for the work, which was neither done promptly nor in a workmanlike manner, by reason of which the contractor was delayed in finishing his work, he was entitled to a reasonable allowance of extra time therefor in computing the number of days' delay for which the owner was entitled to damages under the contract.

NECESSITY OF WRITTEN REQUEST TO EXTEND TIME.

6. Where an architect also acted as the owner's superintendent of the work, and, on the contractor's complaining to him of delays caused by other contractors, the superintendent assured him that he was entitled to additional time therefor, and conceded the entire amount of time demanded, the fact that no demand for additional time was made on the architect in writing was immaterial.

DEDUCTION FOR DELAY INCLUDES SUNDAYS.

7. Where a builder is liable under his contract for a certain amount per day for each day after a certain date until the contract shall be completed, he is not entitled to a deduction for Sundays after such date, the damages to the owner being continuous.

EXTRA WORK REQUIRED BY DEFECTS.

8. Where columns to support a balcony of a building were rendered necessary on account of the defective manner in which the contractor performed his work, he was not entitled to charge for the same as extras.

MEANING OF GUARANTY BY BUILDER AGAINST LIENS.

9. A clause in a building contract that final payment should not be made until the owner should be satisfied that no liens had been or could be filed on the building is necessarily limited to liens and claims arising out of the signer's contract, and does not refer to claims connected with other contracts over which the signer had no control.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a suit by G. L. Vanderhoof against L. J. Shell to foreclose a mechanics' lien claimed by reason of defendant's failure to pay plaintiff an alleged balance due upon a completed contract. The contract was entered into March 30, 1901, for the construction and erection of an eight-flat building, by the terms of which plaintiff agreed that he would furnish the materials and labor necessary to complete the masonry, carpenter, and joiner work, plastering, etc., required for the erection of such building; that he would commence the work at once, and carry it forward in strict conformity to the drawings, specifications, and general conditions prepared therefor by Richard Martin, Jr., architect, along with the details and instructions given during the progress of the work, so as not to hinder or delay any other contractors in the performance of their contracts, and with such celerity as to insure final completion, acceptance, and occupancy on or before August 1, 1901, and that, in case of failure to complete the work by that date, he would pay defendant a sum equal to $7 per day thereafter as damages, to be retained out of any money due and unpaid on the contract, in consideration of the faithful performance of which defendant agreed to pay plaintiff the sum of $10,350.40; payments to be made at the rate of 75 per cent on value of materials furnished and labor performed, as the work progressed; valuations in all cases to be made by the architect. It was further agreed that plaintiff should, on demand, produce and file with

the architect receipted bills in full for all materials and labor, and that a failure to do so should be sufficient cause for refusing further payments or to cancel the contract; and it was also provided that in each of the said cases a certificate be obtained, and signed by Richard Martin, Jr., architect, none of which payments, except the final one, should be construed or understood to be an acceptance of any portion of the work contracted for. It was further agreed between the parties that the work should be carried on under the supervision and direction of Richard Martin, Jr., architect, who should have power to stop or reject any work or materials not in accordance with the drawings and specifications; that the defendant or his architect should have power, in case of the failure of plaintiff to rectify errors or to finish the work within the date specified, to cancel the contract, or to employ other parties to finish the work at the cost and expense of the plaintiff; that should the owner at any time during the progress of the building request alterations, deviations, omissions from or additions to said contract, he should be at liberty to do so, and such changes should be executed by the plaintiff without in any way violating or vitiating the contract, but the value of such changes should be added to or deducted from (as the case may be) the amount of the original contract price; that, when practicable, the cost of any change should be agreed upon in writing before commencing the same, and no additional time should be allowed for extra work unless agreed upon at the time of making the change; that any dispute respecting the true intent and meaning of the drawings or specifications arising between the parties should be referred to and decided by the architect, whose decision should be final and conclusive, but that any dispute arising in regard to the true value of the extra work or the omitted work should be decided by arbitrators, as therein stipulated; that, where there are different contractors employed on the work, each should be responsible to the other for all damage to work, to persons, or to property, or for loss caused by neglect, failure to finish work within proper time, or from any other cause; that any contractor suffering damage should

call the attention of the architect or superintendent to the same for action, as indicated; that, in case of delay being caused by inclemency of the weather, mechanics' strikes, or by other contractors, and the contractor should require an extension of time for such delay, he should notify the architect thereof, who is authorized to decide the length of time to be allowed, but that no extension of time should invalidate the contract; that, should the work be delayed more than twenty days, the contractor should pay the architect for extra superintendence until the final acceptance of the work, the defendant to be satisfied before paying final certificate that no liens or claims are or can be placed upon the building; and that the final certificate would not be paid until after the expiration of ten days from date of final acceptance of the building by the owner, or architect acting for him.

It is alleged in the complaint that the plaintiff performed all the conditions of the contract upon his part, except such as were modified at the instance of the defendant. These modifications or changes are detailed, and their performance shown. It is further alleged that, by reason thereof, plaintiff was unable to complete the building by August 1, 1901; that he applied to the defendant and the architect for an extension of time, under the provisions of the contract, which was granted; that he was entitled to an extension equal to the time between August 1st and October 22d, on account of such changes, and for the further reason that the defendant's other contractors hindered and delayed him in completing the building within the time specified; that the plaintiff, before the commencement of this suit, and before the filing of the lien, demanded in writing of said architect his final certificate for the sum of money he was entitled to receive, but was refused. The answer, after putting in issue the material allegations touching performance, etc., sets up affirmatively (1) that plaintiff failed to complete the work within the stipulated time, and did not finish same until October 22, 1901, eighty-two days thereafter, and that his damage for such delay and loss of rentals was at the full rate of the stipulated sum, $7 per day; (2) that plain-

tiff has suffered a lien to be filed upon said building, contrary to his undertaking; (3) that defendant has paid all certificates given by the architect, and that the building has not yet been accepted, either by the owner or the architect; and, (4) by way of counterclaim, that plaintiff has failed to perform the work as agreed upon, to defendant's damage in the sum of $750. These averments are controverted by the reply, and, the decree being favorable to plaintiff upon the merits of the cause, the defendant appeals.            MODIFIED.

For appellant there was a brief and an oral argument by *Mr. George G. Gammans* and *Mr. Daniel J. Malarkey.*

For respondent there was a brief and an oral argument by *Mr. Andrew T. Lewis.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

The principal questions involved by this controversy are with regard to the maintenance of the suit by plaintiff without having first obtained a certificate from the architect showing the completion of the work in accordance with the contract, and whether plaintiff was entitled to additional time for the completion of the work unless the same was claimed by him and allowed by the architect, and, if so, what amount.

1. Under the testimony adduced, it clearly appears, by a decided preponderance, that the defendant accepted the work as having been performed in due compliance with the undertaking of the plaintiff. On the 14th of October, plaintiff and defendant, accompanied by the architect and Cline, went through the building, inspecting it carefully for the purpose of ascertaining wherein, if in any respect, the requirements of the specifications had not been observed. A list of the defects was prepared and assented to by all the parties, showing what was yet necessary to be done to render the work acceptable. At the time certain parties wishing to rent portions of the building were ready to move in, and a controversy arose relative to the surrender of the keys by plaintiff, so as to admit

of its occupancy by them; he refusing to yield up the keys unless a settlement could be had. This was adjusted, however, by defendant accepting the work, or, as it was then denominated, the building, in all respects, except as to such defects as were noted in the list, whereupon the keys were surrendered and the tenants allowed to move in. There is some dispute among the witnesses in regard to the understanding reached by the parties at the time. The principal inharmony, however, arises from the testimony of defendant, who states that he agreed, "when those things were all remedied —defects in the building"—that he would accept. His architect, however, corroborates the plaintiff and Cline, who testify that defendant then agreed that he would "accept the building up to this list," in consideration of the keys being surrendered. So that we are clear that there was an understanding concluded at the time that defendant accepted the work so far as completed, or the building, with the exception of the minor details mentioned in the list.

Subsequently, on October 22d, there was a meeting of the parties at the office of Mr. Martin, the architect, for the express purpose of settling all difficulties between them; Martin, Cline, Finnegan, and Kavanaugh being present. All these persons testify to what was done there, and are practically of one accord—that the list of defects prepared on the 14th was gone over, item by item, to determine whether the contractor had done the work as it was therein specified that he should. As to many of the items, defendant frankly assented that there had been a compliance. As to some he was in doubt, but, being advised by the architect that they had also been conformed to, he assented; and as to none did he insist that there had not been a performance. It seems, therefore, that it was finally concurred in by the defendant that everything had been done in this regard that he required, and plaintiff had agreed to do, on the 14th, as specified in the list. All the persons present, except the defendant and Kavanaugh, virtually agree in their testimony that defendant then finally accepted the building as having been constructed in full accord with plaintiff's under-

taking, but that a dispute arose as to who was responsible for
the delay in completing the work, and when it was suggested
by the plaintiff that each party had contributed about equally
thereto, and that he was willing to call it even, the defendant
replied that he would go home and sleep over it, and would
notify the architect, who could tell the plaintiff what he would
do, and thus the conference ended. Defendant testifies that
he never accepted the building at that time, and Kavanaugh,
who was his attorney and looked after his interests, says "that
that was just what he intended not to do," and it may be pos-
sible that such was his purpose at the conference. It must be
conceded, however, that these two witnesses are at cross-pur-
poses with the other three, who had equal opportunities for
knowing just what took place at the meeting. But, however
we may look upon the disagreement of the witnesses as to this
particular contention of the defendant, it must follow as a
logical deduction, too plain for dispute, that, when it was
agreed that the work specified in the list of odds and ends had
been completed, an acceptance resulted from the understand-
ing had on the 14th of the month, so that the acceptance of the
work or building by defendant was a matter concluded, in any
event, on the latter date. In this connection, it should be said
of Martin's testimony that he did not entirely concede that
plaintiff had attended to all items as specified in the list, but
noted some few minor repairs and changes that remained to be
made, and signified their willingness to trust the plaintiff to
attend to them, and that the acceptance of the building was
agreed to by defendant notwithstanding. At this meeting the
architect made out a statement of the account as it then stood
beween the parties. It was written in pencil, and inspected
and considered by them without objection, except as it would
be affected by the dispute as to the delay in completing the
work. A copy in ink was given to each party the next day.
This statement exhibited the contract price, with additions
and deductions allowed for extra work and work of which the
contractor was relieved, and payments made, showing a bal-
ance due the contractor of $2,489.38. On October 25th an

additional $2,000 was paid, leaving due a balance of $489.38, which is the amount sued for, plus $25, which plaintiff claims for extra work subsequently performed in putting in a couple of columns. Martin testifies that he made this out as a final statement, and so characterized it. It is also shown, and there is practically no dispute in regard thereto, that the plaintiff at that meeting requested Martin to give him his final certificate, so that the matter might be then fully adjusted, but that it was withheld by reason of the defendant's claim of damages for delay in completing the work as per the contract. Such a certificate has never been delivered, although written demand was made on Martin for it on December 4th following.

It is competent for parties to stipulate in a contract of the nature of the one here in controversy that the contractor shall procure the certificate of an architect that the work has been performed or the building completed in accordance with his undertaking, as a condition precedent to the payment of any installment or the amount finally to become due. Generally speaking, no action or suit can be maintained therefor against the owner until the condition is performed or its requirements waived. The contract becomes a law between the parties in this respect, as they expressly agree that the amount due for the service shall be established by the certificate of the architect; and it throws upon the contractor the burden of producing the particular kind of evidence required by the mutual stipulations of the parties concerning it, unless the circumstances are such that the certificate has been waived, or that the contractor is unable to produce it through no fault of his. Were it otherwise, the law would take from the owner the particular kind of protection against defective and lax performance that he has expressly stipulated for: *Hanley* v. *Walker,* 79 Mich. 607 (45 N. W. 57, 8 L. R. A. 207); *Clarke* v. *Watson,* 18 C. B. (N. S.), *278; *United States* v. *Robeson,* 34 U. S. (9 Pet.), *319; *Martinsburg & P. R. Co.* v. *March,* 114 U. S. 549 (5 Sup. Ct. 1035); *Hudson* v. *McCartney,* 33 Wis. 331; *Smith* v. *Brady,* 17 N. Y. 173 (72 Am. Dec. 442); *Michaelis* v. *Wolf,* 136 Ill. 68 (26 N. E. 384). A salutary rule of practice

also requires that where there is an excuse, or sufficient reason exists why the contractor has been unable to secure or produce such a certificate—as that it has been waived, or the like—it should be averred in the pleadings, so as to lay a foundation for the admission of the proofs to establish the condition: *Michaelis* v. *Wolf*, 136 Ill. 68 (26 N. E. 384). The stipulation in the present contract upon the subject is a peculiar one, and its meaning not a little obscured. Payments are to be made at the rate of 75 per cent of the valuation of the materials furnished and labor done; valuations in all cases to be made by the architect; the contractor to produce and file with the architect at any and all times, on demand, receipted bills in full for all materials and labor, a failure to produce which on demand to furnish a sufficient reason for refusing further payment. Following this stipulation is a provision "that in each of the said cases a certificate be obtained and signed by the said Richard Martin, Jr., architect, none of which payments, except the final one, shall be construed as, or understood to be, an acceptance of any part or portion of the works herein agreed for." If the phrase "each of the said cases" be interpreted to refer to the payments to be made as the work progressed, and the final payment as well, then, if there were nothing else—no other provision limiting its effect, by implication or otherwise —we should conclude that it was intended that the certificate should be produced as a condition precedent to an insistence upon either of these payments.

There is another and subsequent provision contained in the agreement, however, that has an important bearing upon this one, which is that Martin is made the superintendent, with power to stop and reject any work or materials not in accordance with the drawings and specifications, as well as an architect and arbiter between the parties as to whether the specifications have been complied with so as to entitle the contractor to his stipulated compensation. The evidence shows that Martin, in pursuance of his duties in this regard, was frequently about the building, inspecting the materials and work, and approving of each as the building progressed; that he was con-

stantly directing the correction of errors committed in the details as the work went forward; and that his suggestions were cheerfully complied with. Under a similar state of the contract and the facts, it has been held that whatever passed under the inspection of the superintendent, and was in good faith approved by him, expressly or by implication, was not open to objection on his part afterward, and that as to such work, at least, the plaintiff had the same right to recover that he would have had if the proper certificate had been furnished him: *Wildey* v. *School District*, 25 Mich. 419. Where the architect is given entire supervision and direction as the work goes forward, the intention is certainly not deducible from the provision referred to that he could, while acting in the discharge of his authority in that respect, and without being misled or imposed upon, approve the work, then again re-examine it, and refuse a certificate,—thus precluding recovery on the part of the contractor. But, however that may be, there has been a clear waiver of the certificate here. The owner accepted the building, and the architect refused, at the probable instance of the owner, to issue the certificate to which plaintiff was entitled. The certificate was to be confined to the quality and valuation of the work done, and not to be controlled by any delay occasioned on the part of the contractor or other person. That is a matter provided for in another clause of the contract, and will be noticed later. The account rendered on October 22d shows that plaintiff was entitled to a certificate that the work had been completed according to contract, were it not otherwise incontrovertibly shown by acceptance of the building by the owner as completed, and by the facts indicating full performance to his satisfaction and that of the architect. The evidence adduced makes the point as to waiver conclusive.

2. But is it comprehended by the pleadings? We conclude that it is, since the defendant answered and went to trial. The complaint might have been made more specific, but it shows facts which entitle the plaintiff to a certificate, that he demanded the same of the architect, and that it was refused—the

evidence indicating that the refusal was at the instance of the owner—so that plaintiff was entitled to insist upon the waiver: *McDonald* v. *Patterson,* 186 Ill. 381 (57 N. E. 1027).

3. The point was made that defendant might have lawfully taken possession of the building, without the act being necessarily construed as an acceptance of the work as fully completed. This would be true under some conditions, but the act here was unequivocal. The keys were delivered, and defendant went into possession upon the understanding that he accepted the building up to the list then agreed upon, which work remaining was afterward performed to the satisfaction of the architect.

4. This brings us to plaintiff's claim for an extension of time, or for relief from the payment of damages on account of the delay in completion from August 1st to October 22d, a period of eighty-two days. He alleges that he was delayed by reason of changes made in the plans and specifications; that he made application to the architect for the extension, and that it was allowed by him, and by the defendant also; that he was entitled to an extension from August 1st to October 22d on account of such changes, and the hindrances occasioned by other contractors of the defendant. Two causes only are specified as occasioning the delay, and the investigation should be confined to these. It was stipulated that when practicable the cost of any change should be agreed upon in writing, that no additional time should be allowed for extra work unless agreed upon at the time of making the change, and that, in case of delay being caused by the inclemency of the weather, mechanics' strikes, or by other contractors, and the contractor should require an extension of time for such delay, he was to notify the architect thereof, who should decide the length of time to be allowed. Two changes were involved—one in substituting a concrete retaining wall for brick, for which the contractor was alowed $112 extra, and the other in substituting adamant for lime-mortar plaster; the plaintiff being relieved of this work in consideration of a deduction of $800 from the contract price; the work being finally done under a

contract by defendant with the Bentley Adamant Co. This latter is not a case where extra time could be allowed under the contract on account of extra work, and it was naturally enough not agreed upon at the time. As near as we can come at it, plaintiff claims additional time for delay as follows: Three days by reason of failure of defendant's tenants to vacate old buildings, so as to permit of plaintiff entering at once upon the performance of his contract; six days on account of the substitution of a cement for a brick retaining wall; forty-one days, partial' delay by reason of work having been impeded on account of the change from lime-mortar plaster to adamant; twenty-two days, required for chiseling off adamant plaster around openings so as to enable the workmen to fit the casings properly to the walls; six days, caused by defendant's contractors for putting in gas fittings; twenty-one days, caused by defendant's contractors for plumbing; three days on account of bad weather; and fifteen days for change in attic. The first and next to the last of these items must be dismissed as not comprehended by the pleadings. The item of six days for change in retaining wall, and fifteen days for change in the attic, must also be disallowed, because no extension of time was agreed upon when the changes were authorized.

5. There was a delay, and a large one, caused by the change relative to plaster. Plaintiff was ready for his subcontractor to begin with his preparation therefor on May 20th, and it appears by the testimony that he could have had the plastering all on and out of the way for the woodwork by the 15th of June. Defendant, however, insisted on the change being made, and Smeed was induced to subcontract with plaintiff to do the adamant work for an additional compensation, but, by reason of his inexperience in that kind of work, was unable to proceed with it, and, on demand of the architect and plaintiff, canceled his contract on June 27th. Plaintiff then entered into a subcontract with Callihan to do the work, the defendant agreeing to pay $300 additional to the amount agreed upon for lime-mortar plaster. After completing one flat, Callihan

was unable to go farther, and surrendered his contract. On July 11th the defendant, by written agreement, and in consideration of $800 deduction from the contract price, relieved plaintiff of the work of lathing and plastering, and at once let a contract to the Bentley Adamant Co. therefor. This company was successful, and completed the undertaking about August 1st. From plaintiff's time book, it appears that from May 15th to June 22d he was working from ten to fifteen men, while from June 22d to August 3d he had from five to seven employed—a little more than half as many. Of the forty days, therefore, during which plaintiff was required to curtail his labor, twenty would not be an inequitable allowance for delay, providing he is otherwise entitled to it. Defendant was the proximate cause of the delay, by requiring the change, as otherwise the work would have been done by June 15th, and plaintiff would probably have completed his undertaking by August 1st. The adamant company did its work poorly, and it required much time to reduce the plaster around the openings in order to prepare them for the casing work. The clearest estimate relative to the matter to be found in the testimony is that made by Shepherd, a carpenter of experience, who testifies that, to complete the casings under ordinary conditions, it would take four men twenty days, and to do the work over the adamant mortar, as put on, it would consume at least twice as much time. It is suggested by the evidence, also, that four men constituted a reasonable corps of workmen for employment at the time. Twenty days should therefore be allowed the plaintiff for this extra work, if other conditions to be hereafter considered admit of it.

6. The plumbing work was done under an independent contract let by defendant. The contractor was lax in doing the work when plaintiff was ready for it, causing the latter to lay off his men from September 7th to September 28th (twenty-one days) by reason thereof. Deducting Sundays, there was a delay of eighteen days on that account, to which should be added two days for subsequent delay for same cause. We think, also, that four days—not six, as claimed—was caused by

the contractors for putting in the gas fittings; making a total in time of sixty-four days. The defendant contends that neither this nor any other time has been allowed by the architect; the plaintiff never made a demand in writing therefor, and the architect has had no opportunity to pass upon the matter so as to determine what time he is entitled to, within the purview of the contract; and therefore that he should not be allowed any at the hands of the court. It is disclosed, however, that plaintiff frequently mentioned the fact of being delayed by these several causes to the architect, who, as we have seen, was also acting as superintendent of the work as it proceeded, in which respect he was executing the will of the owner, and was assured by him from time to time that he was entitled to additional time therefor; going so far as to concede, by verbal assertion, that plaintiff was entitled to the whole time from August 1st to October 22d, and even more. No demand in writing was necessary, as the contract does not require it. At the meeting of October 22d, plaintiff, with a view of reaching a settlement, suggested to defendant that each had delayed the other, and that, both being at fault, the matter of delay should be eliminated, and the settlement adjusted accordingly. At this the defendant declined further negotiations, and refused to do more than to pay $2,000 upon the account as then stated. He made no such claim as that time had not been allowed the plaintiff by the architect, but complacently remarked that he would go home and sleep on it, and let him know the next morning; resulting in a refusal to pay anything additional. This conduct on the part of the architect and the defendant, we think, operated as a waiver of this condition of the contract, and therefore the plaintiff should be allowed sixty-four days for delay caused by the defendant and his contractors to plaintiff in the performance of his contract.

7. The plaintiff, however, is not altogether blameless, as he might have pushed the work more expeditiously and with better results after August 1st. He insists in this connection that the Sundays occurring subsequent to August 1st should be deducted from the time of delay chargeable to him. But

the damages accruing to the defendant upon that account are a constant factor, and run on, whether on secular or Lord's days.

8. And again, plaintiff claims $25 for the work of putting in two columns as a support to the balcony; and there is a controversy as to whether they were rendered necessary on account of the defective manner in which plaintiff performed his work, or by reason of defects in the plans and specifications. But upon a careful survey of the testimony we are of the opinion that plaintiff was at fault in this regard, and that the columns were required to correct errors or omissions which he had suffered. Therefore he is not entitled to that sum. Defendant has shown that his damages accruing for loss of rentals by reason of the delay were over $7 per day, and the excess of delay beyond that allowed plaintiff is eighteen days, which would entitle him, therefore, to an additional credit on plaintiff's account with him, as stated by the architect on October 22d, of $126; leaving a balance due plaintiff of $363.38.

9. As a defense, it is alleged that plaintiff suffered one C. C. Cline to file a mechanics' lien upon the building, and by reason thereof is not entitled to final payment, as it was stipulated that defendant should be satisfied before making such payment that no liens or claims are or can be made or placed thereon. This provision must be construed to have reference to liens or claims arising from the materials or work which plaintiff contracted to furnish or perform, and of which he had not been relieved by subsequent modification or agreement. The only testimony offered upon this phase of the case was a certified copy of a mechanics' lien which had been filed by Cline against the building, claiming a lien to secure the payment of $274.02, as a balance due for hardware purchased by the defendant of Cline. Cline's account aggregates $574.02, and the defendant is given a credit thereon for $300. Defendant insists that this account was for hardware which plaintiff, under the specifications, was required to furnish. The specification involved reads as follows: "Allow $300 for finishing hardware. The contractor is to furnish and fix all hardware in place." This clause was intended to require the contractor to furnish hard-

ware to the amount of $300, and not above that; and as the claim of lien filed shows that defendant has had credit upon the account for $300, "allowance by contractor," we conclude that plaintiff has complied with his contract, and that the lien for the balance due Cline is not for any materials that plaintiff agreed to furnish, so that this defense is not well taken.   The counterclaim interposed has not been maintained in any respect.

These considerations result in a modification of the decree of the circuit court, in that plaintiff will recover of and from the defendant the sum of $363.38, instead of $433.38, and in all other respects it will be affirmed, neither party will be awarded costs or disbursements on the appeal.                    MODIFIED.

---

Decided 25 May; rehearing denied 3 August, 1903.