Argued June 20, decided July 9, 1912.

# PIPPY v. WINSLOW.

[125 Pac. 298.]

CONTRACTS—BUILDING CONTRACT—"SUBSTANTIAL ·PERFORMANCE."

1. A "substantial performance" of a building contract admits of only such deviations as are inadvertent and unintentional, and not due to bad faith, and such as do not impair the structure as a whole, and can be conveniently remedied, and· without injustice be paid for by deductions from the contract price.

MECHANICS' LIENS—RIGHT TO ENFORCE—BUILDING CONTRACTOR.

2. Where a building contractor fails in any considerable and material respect, or willfully fails in an unimportant respect, to carry out his contract, he cannot enforce a lien for the work done.

MECHANICS' LIENS—BURDEN OF PROOF—BUILDING CONTRACTOR.

3. In a building contractor's action to enforce a mechanic's lien for work done under a contract which has been changed, the burden is upon him to show a substantial compliance with the contract as changed.

MECHANICS' LIENS—DECREE.

4. While, in a suit to enforce a mechanic's lien for work done under a building contract which has been changed by agreement of the parties, the court may adjust the differences between them as justice demands, and may allow something for what is deemed insufficient work, it cannot disregard the legal rights of the parties but must follow the law.

CONTRACTS—BUILDING CONTRACT—PERFORMANCE—DEFECTS—WAIVER.

5. Where part· of a building being constructed under a contract was approved by the owner, who was himself an experienced contractor, and by the architect, either expressly or impliedly by failure to promptly object, and no fraud was pleaded or proved, objections could not be made thereafter and the contractors were entitled to recover for such part.

CONTRACTS—BUILDING CONTRACT—CONSTRUCTION—ARCHITECT—IMPLIED APPROVAL.

6. Where an architect is by a building contract made the sole arbiter between the parties of matters concerning the work, and has knowledge of them and does not object at the time, his failure to object amounts to an approval which cannot be withdrawn to the injury of the contractors.

CONTRACTS—BUILDING CONTRACTS—CHANGE BY AGREEMENT.

7. Where the owner of a building orders changes, and the contractor makes them, recovery may be had therefor as on an independent contract, although the original contract provides that no extra work shall be allowed except on a written order.

CONTRACTS—ALTERATION BY AGREEMENT.

8. A written contract may be changed verbally at the pleasure of the parties.

MECHANICS' LIENS—SUFFICIENCY OF EVIDENCE.

9. Evidence in an action to enforce a mechanic's lien claimed by a building contractor *held* not to show any material or unauthorized deviation from the contract so as to bar the contractor's right to enforce his lien.

CONTRACTS—BUILDING CONTRACTS—DAMAGES FOR DELAY.

10. Where the delays in the performance of a building contract were not unreasonable and were caused by various changes made by the owner who stated that he did not intend to enforce the penalty prescribed for non-completion within a specified time, the owner was not entitled to damages for delays so caused.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by T. A. Pippy and J. D. Bisbrow, partners, doing business under the firm name of Pippy & Bisbrow, against J. S. Winslow to foreclose a mechanic's lien. The facts are as follows:

On July 1, 1909, plaintiffs, as partners, entered into a written contract with defendant for the construction of a four-flat building on the northwest corner of Washington and East Nineteenth streets, Portland, Oregon. The contractors were to furnish all the materials and perform all the work necessary for a full completion of the building, both the work and materials to be the best of their respective kinds. The work was to be done under the direction of the architect, W. F. Tobey. By the contract it was understood that such additional drawings and explanations as might be necessary to detail and illustrate the work, were to be furnished by the architect, so far as they might be consistent with the purpose and intent of the original drawings and specifications. In case the owner and contractors should not agree as to the amount to be paid or allowed for any alterations that might be made, the work should go on and the matter be referred to arbitration. Should the contractors fail in the performance of the agreement, the same having been certified to by the architect, the owner should be at liberty to provide such labor or materials as the con-

tract called for, deducting the cost thereof from any money due the contractors. Upon a certificate from the architect, 80 per cent of the labor performed, and material on the ground, should be paid for from time to time as the work progressed, final payment to be made within thirty days after the completion. A payment of $3,000 on the contract was made by Mr. Winslow.

From a decree in favor of plaintiffs, defendant appeals.

.. AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. O. Stearns.*

For respondents there was a brief and oral arguments by *Messrs. Lewis & Lewis.*

MR. JUSTICE BEAN delivered the opinion of the court.

The contract contains 12 articles and refers to 151 specifications which are made a part thereof. These specifications were prepared in the city of San Francisco by J. E. Kafft, architect. As the materials manufactured in Portland differed in style and size from that in the former city where the plans were drawn, changes therein were necessitated. Therefore 27 alterations were agreed upon and attached as addenda to the specifications. Afterwards numerous other alterations in the building were agreed to. Some were made by the contractors and approved by the owner and his architect. In regard to others there is contention. In fact, the plans were changed to such an extent that they became of little value as a guide in the performance of the work. To begin with, they were something like a ready-made suit of clothes which does not fit. The owner of the building was an old, experienced contractor and carpenter and understood that part of the construction. No doubt he could express orally what he desired, better than in writing. In discussing the changes, as the work progressed, there were sometimes misunderstandings as to

what the owner directed. The record contains 860 pages of typewritten testimony and 43 exhibits. Apparently the circuit court heard the testimony with very careful attention. Experts were called, who examined the building and enlightened the court with their knowledge and experience. After a hearing of some length, the court allowed $252.90 of the $412.40 claimed, for extra labor and materials, deducted the sum of $189.20 for defective work and materials, and rendered a decree in favor of plaintiffs for $5,406.70 with interest, $250 attorney's fees, and $1.60 for recording the lien. The defendant claims that he was damaged in the sum of $3,919.15 on account of the defects and failure to construct the building according to the contract, and furthermore that plaintiffs are not entitled to a lien.

The voluminous record and the many items in dispute render it impracticable to refer in detail to each matter. The controversy reminds us of a case involving domestic difficulties. About the last of August, when the building was advanced as far as the plastering, the contractors and the owner quarreled in regard to the construction of the front porch columns. Since that time the difficulties and differences have apparently increased. We approach the solution of this difficult question having in mind the following general rules.

1. The substantial performance of a contract like the one in question permits only such omissions and deviations as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, can be conveniently remedied, and may, without injustice, be paid for by deductions from the contract price.

2. Where the contractor fails to perform a considerable part of the work required by the contract, his failure, irrespective of whether his intentions were good or bad, constitutes a bar to his enforcement of a lien for the work performed. If the defects show that the contractor per-

formed the work in a slovenly and improper manner, not conforming substantially with the plans and specifications and thereby defeating the intentions of the parties to have the work done in a particular manner, the contractor, unless there has been a waiver, cannot enforce a lien. The willful omission, though in an unimportant respect, will preclude the assertion of a lien by him. The spirit of the contract should be faithfully observed, though the letter thereof fail. 20 Am. & Eng. Enc. of Law (2 ed.) 367; *Glacius* v. *Black,* 50 N. Y. 145 (10 Am. Rep. 449) ; *Anderson* v. *Petereit,* 86 Hun 600 (33 N. Y. Supp. 741) ; *Perry* v. *Quackenbush,* 105 Cal. 299 (38 Pac. 740).

3. In a suit by a contractor to enforce a mechanic's lien, the burden of proof is upon him to show a substantial compliance with the contract, as modified and changed from time to time. *Adams* v. *MacKenzie,* 59 Or. 89 (114 Pac. 460).

4. A court of equity, in adjusting such differences, should be governed mainly by consideration of right and justice between the parties. It cannot disregard legal right but must follow the law. It may, however, allow something for what is deemed insufficient work, while granting a decree for the amount found equitably due. *Heberlin* v. *Wendt,* 99 Ill. App. 506; *Burn* v. *Whittlesey,* 2 MacArthur (D. C.), 189.

5. Under the circumstances of this case, that part of the building which passed under the inspection of Mr. Winslow, the owner, and Mr. Tobey, the architect, and was approved by them in good faith, expressly or by implication, was not open to objection by them afterwards, and plaintiffs may recover therefor. *Vanderhoof* v. *Shell,* 42 Or. 578, 587 (72 Pac. 126) ; *Wildey* v. *Fractional School District Number 1 of Paw Paw and Antwerp,* 25 Mich. 419. Mr. Winslow, being a contractor of many years' experience, practically superintended the

construction for some time, and under such circumstances, the right of objection should have been exercised promptly. *Ashland Lime, Salt & Cement Company v. Shores,* 105 Wis. 122 (81 N. W. 136).

6. When the architect is, by the building contract, made the sole arbiter between the parties of matters concerning the material and character of the work, has knowledge of such, and does not object at the time, it will be an approval of the same, which cannot be renounced to the injury of the contractors. The exercise of his judgment on such matters will be binding on both parties in the absence of fraud being pleaded and proved. *Wright v. Meyer* (Tex.) 25 S. W. 1122.

7. Where the owner orders changes made in the construction of a building, although the contract provides that no extra work shall be allowed except on a written order, if such work be done at the instance of the owner, for which a benefit is derived, it must be regarded as an independent contract for which a recovery may be had. *Escott & Son v. White,* 10 Bush (Ky.) 169; *Baum v. Covert,* 62 Miss. 113.

8. A written contract may be changed verbally at the pleasure of the parties to the agreement. *Cooke v. Murphy,* 70 Ill. 96; *Munroe v. Perkins,* 9 Pick. (Mass.) 298 (20 Am. Dec. 475).

9. It is asserted by plaintiffs that Mr. Winslow, in the early part of the work, stated that there would be some changes in the plans and specifications which would be met with a "give and take" on both sides, and that it was under this arrangement that several of the changes were made for which there was no additional charge by the contractors and no allowance made to the owner. They also assert that defendant was a nervous wreck and hard to please. It appears that he had retired from business.

Referring to some of the testimony in regard to the substantial completion of the building, Mr. W. F. Tobey,

architect, testified in relation to each paragraph of the specifications, stating in part that the general class of the work was what he would call fair; that little details were not complied with; that the building was substantially completed; that he tried to carry out the work in touch with Mr. Winslow, and to help him to the best of his ability; that Mr. Winslow assumed the control of the superintendency of the building at first; that he was restrained from issuing a certificate of completion by the owner's notice, and on account of the changes and orders made by the owner without the architect's knowledge.

J. V. Bennis, an architect of 22 years' experience, testified, in substance, that he examined the Winslow building; that the general construction, finishing, and painting of the whole house he considered a little above the average; that the framing was most excellently done; that the finishing, for that class of building, was very good; that there might have been slight defects in a few things, but that he would not consider them objectionable; that the material was class A so far as he could see; that the outside finishing was excellently done and the doors were above the standard.

John G. Wilson, who had been an architect for 24 years, actively engaged in the business, testified that he examined the building from basement to top with Mr. Bennis; that he did not see anything wrong with the construction, but that he could not see all of it; that he thought the workmanship very good for that class of building, and that the material and finishing were good; also that the front porch and posts were all right.

E. J. Burkhardt, who was in the planing mill business, and who furnished the material for the house, swore in substance, that he furnished the interior finish; that the doors and windows were all No. 1 goods, and that the material was thoroughly kiln dried; that the doors were five cross panel doors; that a few were changed from

Sig. 8

cross panel to one panel; that a change was made afterwards to one panel veneered door, which had to be manufactured, causing a delay of three weeks.

C. Moore testified that he had been a carpenter for 15 years; that he was a finisher, and worked on the Winslow building on the inside for four or five weeks, receiving $4 per day instead of $3.50, the going wages; that the general character of the work was first class all the way through, and the material good; and that he thought it was as good as any he had ever seen in town on that class of building.

10. It appears that delays in the performance of the contract were caused by various changes made by the owner, who stated that he did not intend to enforce the penalty for noncompletion within the specified time. *Vanderhoof* v. *Shell*, 42 Or. 578, 587 (72 Pac. 126). Under all the circumstances of this case, we do not think that the time within which the contractors erected the structure was unreasonably long, and the owner is not entitled to damages for delays so necessitated.

We will not incumber the record with a discussion of the evidence, which, viewed from an equitable standpoint and under the rules of law alluded to above, we think supports the main conclusions of the trial court. The court had an opportunity to observe whether or not the experts and other witnesses were prejudiced or fair in the matter. From the record, it is impossible to figure the several items to an exact amount. An estimate, such as that made by the witnesses and the circuit court, is the nearest approach to justice in the premises.

Therefore, after careful examination of the record, we can come to no other determination than that the decree of the lower court should be affirmed, and it is so ordered.

AFFIRMED.