WALDO BROS. COMPANY *vs.* PLATT CONTRACTING CO. INC.

Middlesex. December 7, 1939. — February 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Contract,* Construction, Performance and breach.

A tripartite contract, made on June 25 by a general building contractor, a subcontractor who had since March partially performed his subcontract and had, so far as appeared, been paid thereunder by the general contractor for all work done through June 14, and a materialman to whom the subcontractor was indebted, and providing that the materialman would continue to supply the subcontractor with materials necessary to enable him to complete the subcontract, that the subcontractor assigned to the materialman all sums then due or thereafter to become due from the general contractor, and that the general contractor would pay the materialman on July 3 a stated percentage of labor and materials furnished by the subcontractor "up to and including" June 25, less certain deductions, was construed by this court, in the circumstances, to mean that the general contractor's payment to the materialman should be based on the labor and materials furnished by the subcontractor after June 14 only.

The obligation of a general contractor, under a tripartite contract between him, a subcontractor and a materialman of the subcontractor, to pay the materialman a percentage of materials and labor furnished by the subcontractor during a certain period, was not affected by a failure of the subcontractor to perform a promise by him in the same contract to submit requisitions to the general contractor, where it appeared that the materialman had fully performed his obligations under the contract.

A materialman, who was not in default in the performance of his obligations under a tripartite contract in writing between him, the general contractor and the subcontractor whereby the general contractor had promised to pay him a percentage of certain materials and labor furnished by the subcontractor, was not precluded from recovering from the general contractor by the fact that the general contractor had not determined the value of such materials and labor, although the subcontract provided that the general contractor should determine

those values and under the tripartite contract the subcontractor promised to complete the subcontract "in accordance with its terms and provisions."

CONTRACT. Writ in the Superior Court dated July 19, 1937.

The action was heard by *Williams*, J.

The plaintiff requested the following rulings: "1. In a suit by A against B on a contract wherein A, B, and C have severally assumed certain obligations, if A has completely performed, he is not chargeable with C's defaults and can recover from B the performance which B promised, even though C has not performed those duties which he assumed. B's rights are against C for breach of contract, and do not affect B's obligations to A if A has completely performed. 2. If the plaintiff fully performed everything which, under the agreement of June 24, 1937, it agreed to perform, it is entitled to performance of the defendant's agreement thereunder, even though Wilgoren did not perform those things which he agreed to perform. 3. Default by Wilgoren, not caused or procured by the plaintiff, is not chargeable to the plaintiff and does not prevent the plaintiff from recovering from the defendant if the plaintiff has fully performed everything which, under the terms of said agreement of June 24, 1937, it agreed to perform. 4. The agreement of June 24, 1937, is not merely an assignment to the plaintiff of money due or thereafter to become due from the defendant to Wilgoren, but is a contract under the terms of which each of the parties acquired rights and incurred obligations. 5. The legal effect of said agreement of June 24, 1937, is not conclusively determined by the use therein of the word 'Assignee' to designate the plaintiff. 6. By entering into the contract of June 24, 1937, the plaintiff became bound to the defendant to do certain things which previously the plaintiff had not been bound to do, and if the plaintiff performed all such things, the plaintiff is entitled to performance by the defendant of the defendant's obligations thereunder, even though Wilgoren did not completely perform those things which he agreed to perform."

The trial judge refused the foregoing requests; ruled in substance that "the value to which reference is made in paragraph 3 of the agreement of June 24, 1937, between the plaintiff and the defendant, are the values to be determined in accordance with the provisions of the contract between the defendant and Wilgoren"; stated that he was "unable to find that the plaintiff had sustained the burden of proving what, if anything, was due to Wilgoren on any of the material dates"; and found for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*I. M. Davis & A. Nemrow*, for the plaintiff.

*R. Robinson & I. R. Ostrofsky*, for the defendant.

Cox, J. The plaintiff brought this action of contract upon a declaration which alleges, in substance, that the parties entered into a contract whereby the defendant agreed to pay to the plaintiff a sum equal to eighty-five per cent of all materials and labor furnished by one of the defendant's subcontractors, one Wilgoren, "up to and including the tenth day of July, 1937, less certain payments previously made by the defendant to the plaintiff; that said payment was to be made on the eighteenth day of July, 1937," but that the defendant had failed to pay as agreed. The answer contains a general denial, plea of payment, and, further, an allegation that if there was a contract between the parties, it was "predicated" upon the performance of "the contract of . . . Wilgoren by" him, and that he "breached his contract with the defendant and did not perform the same." The case was referred to an auditor and thereafter was tried by a judge of the Superior Court upon the report of the auditor and other evidence. The judge found the facts as found by the auditor to be true, except as stated in his findings, denied certain requests for rulings of the plaintiff, made certain rulings, and found for the defendant. The plaintiff seasonably excepted to his refusals to rule, to two of his rulings, "and to the court's finding for the defendant."

On February 12, 1937, the defendant had a written contract for the erection of a theatre and stores in West

Newton.   On March 5, 1937, Nathan Wilgoren (hereinafter referred to as Wilgoren) entered into a contract with the defendant, as a subcontractor to furnish certain labor and materials called for by the plans and specifications for the structure that the defendant was to build, for a price of $15,750.   Payments were to be made by the defendant to Wilgoren on the third and eighteenth days of each month for eighty-five per cent of the value of the labor and materials furnished up to and including the last day of the previous month and the fourteenth day of the current month, said value to be determined by the defendant; and forty-three days after the completion of all of Wilgoren's work, he was to receive the balance "of 15 per cent of the value of labor and materials."   This contract provided that "the word 'completion', wherever used in this agreement shall mean completion in every form and detail of the work called for under this agreement and shall not mean substantial performance," and that Wilgoren's right to compensation should be based upon completion of his contract within this meaning.   There was a further provision that if Wilgoren at any time neglected or failed to begin and prosecute his work with promptness and diligence, the defendant might, after twenty-four hours' notice to him, be at liberty to "repudiate" the agreement and proceed to complete the work; and might charge any proper loss to the account of the payments therein stipulated, and charge Wilgoren with damages for nonperformance of said work.   The plaintiff was not a party to either of these contracts and did not know of their provisions.   On June 23, 1937, Wilgoren's work had progressed satisfactorily and on time, but he owed the plaintiff $4,589 for materials purchased, "for the most part brick used in the work on the theatre."   On that date a conference was held, which Wilgoren and representatives of the plaintiff and defendant attended, and Wilgoren's indebtedness to the plaintiff was discussed.   In response to an inquiry, he stated that it would cost "about $2,000 for labor and about $2,000 for materials to finish the work."   After considerable discussion, the plaintiff, the defendant and Wilgoren entered into a written agreement which was exe-

cuted on June 24, 1937. Strange as it may seem in view of this litigation, there is a specific finding by the auditor that all the parties had discussed all matters in the contract fully on the afternoon of June 23, 1937, "and that all parties fully understood the terms thereof."

The agreement, executed in triplicate, recites the existence of the contract between Wilgoren and the defendant, its partial performance, and that "certain material and labor still remains to be furnished and performed in order to complete" the subcontract. There are further recitals of the amount due the plaintiff from Wilgoren; that the plaintiff "has agreed and hereby does agree to furnish under the terms and conditions hereinafter set forth" additional material required by Wilgoren to complete his contract "up to but not exceeding $2,000"; that the defendant desires "said additional material be furnished by" the plaintiff and that the contract between it and Wilgoren "be performed and completed in accordance with its provisions and without unnecessary delay"; that Wilgoren assigns and transfers to the plaintiff "all sums now due and hereafter to become due from the . . . [defendant], whether for material and labor heretofore furnished and hereafter to be furnished by . . . [Wilgoren] in the performance of the . . . [subcontract] or otherwise due or to become due under said . . . [subcontract]"; that it "is hereby agreed by all parties hereto that the balance which will be due . . . [Wilgoren] upon completion of said . . . [subcontract] will be not less than $7,503"; and that Wilgoren "further agrees to complete said . . . [subcontract] forthwith, in accordance with its terms and provisions," and to prepare and submit to the defendant forthwith a requisition for material and labor furnished by him "up to the 25th day of June, 1937 and similar requisitions for material and labor furnished up to the 10th and 25th day of each month hereafter." Following this, the clauses appear in the contract that seem to have caused the trouble: "3. The General Contractor [defendant] agrees to pay to the Assignee [plaintiff] on the 3rd day of July a sum equal to 85% of all material and labor furnished

by the Subcontractor [Wilgoren] up to and including the
25th day of June 1937 less whatever amounts may hereafter
be advanced by the . . . [defendant] to the . . . [plaintiff] for payroll payments as hereinafter provided for, and
to make similar payments to the . . . [plaintiff] on the
18th day of July and on the 3rd and 18th day of each month
thereafter. The . . . [defendant] further agrees to pay to
the . . . [plaintiff] on the 44th day following the completion of the . . . [defendant's] contract with . . . [the
owner], or forthwith upon receipt from said . . . [owner]
of the final payment due to the . . . [defendant], whichever shall first occur, the total amount due to . . . [Wilgoren] for material and labor furnished and performed by
. . . [Wilgoren] on said job, which amount shall be at
least $7,503 less whatever amounts may hereafter be paid
by the . . . [defendant] to the . . . [plaintiff] under the
terms of this agreement. 4. The . . . [defendant] further
agrees to pay to the . . . [plaintiff] before ten o'clock on
Friday, June 25, 1937 an amount equal to the payroll due
to . . . [Wilgoren's] employees on that date and to pay
to the . . . [plaintiff] on or before ten o'clock A.M. of each
Friday thereafter an amount equal to the payroll due on
each of said dates to . . . [Wilgoren's] employees. 5. The
. . . [plaintiff] hereby agrees to furnish to . . . [Wilgoren] material (of the kind regularly carried in stock and
sold by the . . . [plaintiff]) required to finish said job, up
to but not exceeding a total of $2,000. 6. The . . . [plaintiff] further agrees to apply all payments received from
. . . [Wilgoren] as follows: (a) Sums received from the
. . . [defendant] under the provisions of Paragraph 4 supra,
up to but not exceeding a total of $2,000, shall be paid
forthwith by the . . . [plaintiff] to . . . [Wilgoren's] employees in such sums as may be due to said employees for
labor actually performed on said job during the preceding
week, said employees and the amount due to each to be
designated by . . . [Wilgoren]. (b) After making the
payments to . . . [Wilgoren's] employees provided for in
paragraph (a) supra, all sums received by the . . . [plaintiff] from the . . . [defendant] shall be first applied to

payment for material hereafter furnished by the . . . [plaintiff] to . . . [Wilgoren], as provided for in paragraph 5 supra." The contract further provides that if anything remains after making the above described payments, it should be applied by the plaintiff *pro rata* to pay certain creditors of Wilgoren, and, finally, if anything is then left, it should be paid to Wilgoren.

The plaintiff contends that the quoted paragraph 3 amounts to a separate, independent and unconditional agreement by the defendant to make certain payments to the plaintiff, and "that the total amount to be paid to the plaintiff by the defendant shall be at least $7,503, which amount, so far as appears, has no connection whatever with the amount of the contract between the defendant and Wilgoren." The defendant contends that it was not the intention of the parties on June 24, 1937, that when the initial payment became due under the contract there was to be a review of all the labor and materials furnished from the beginning of the work, but that the payment called for in paragraph 3 of the contract in question was to be for labor and materials, if any, furnished since the date on which Wilgoren had been paid or was entitled to be paid under the subcontract, that is, since June 14.

In our opinion this three-party contract, although confusing, unsatisfactory and difficult of construction, is not unintelligible and is susceptible of interpretation. "So far as reasonably practicable it should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." *Bray* v. *Hickman*, 263 Mass. 409, 412. "Where the contract is in writing, there is no fixed and unyielding rule for disposing of contentions touching its meaning except the general one that the intention of the parties drawn from the entire instrument is to be ascertained and applied to the adjustment of the dispute. It is wholly a matter of construction and each contract is to be interpreted according to its own tenor. Resort may be had to certain presumptions or to the circumstances as aids in cases of doubt, but every other rule yields to the purpose of the parties

as disclosed by the words used and by the nature of the understanding disclosed by the instrument. The ultimate and final rule of law in all cases is to discover that purpose." *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138, 140, 141, and cases cited.

We cannot adopt the plaintiff's contention. Prior to the execution of the contract, the defendant had paid Wilgoren on account of the subcontract $7,875.15. The contract that was executed on June 24 has to do with the attempted securing of Wilgoren's indebtedness to the plaintiff and to the completion of Wilgoren's subcontract. It speaks of "material and labor [that] still remains to be furnished and performed in order to complete the aforesaid" subcontract, which contract Wilgoren agreed to complete. He assigned "all sums now due and hereafter to become due from" the defendant under that contract. It was agreed that if he completed his contract, there would be due "at least $7,503 less whatever amounts" might thereafter be paid by the defendant to the plaintiff under the contract. When we add this sum to the $7,875.15 that had already been paid, the total, $15,378.15, is very close to the contract price of $15,750 in the subcontract. The last payment to which Wilgoren was entitled under the subcontract, prior to June 24, was due on June 18, and there is nothing to show that it was not made on that date. The next payment would be due on July 3. It is true that Wilgoren, in the contract in question, agreed to prepare and submit to the defendant forthwith a requisition for materials and labor furnished up to June 25, 1937, and similar requisitions for materials and labor furnished up to the tenth and twenty-fifth days of each month thereafter. His contract with the defendant provided for semi-monthly payments, in accordance with which he was entitled to be paid on June 18 eighty-five per cent of the value of the labor and materials furnished between the last day of May and June 14, said value to be determined by the defendant. As already pointed out, the defendant had made substantial payments to Wilgoren, presumably upon valuations determined by it. In these circumstances, it hardly

seems that there was any occasion for, or that the parties intended, Wilgoren to be required to submit estimates of materials and labor furnished between the middle of March, when he commenced work, and June 25. The payroll of Wilgoren was due on June 25.

We think that the third paragraph of the contract by which the defendant agreed to pay the plaintiff eighty-five per cent of "all material and labor furnished by . . . [Wilgoren] up to and including the 25th day of June 1937," relates to the payment of such labor and materials as had been furnished between June 14 and June 25 less what was advanced by the defendant for the payroll due on June 25. "Similar payments" were to be made on July 18 and on the third and eighteenth days of each month thereafter. Such a construction of the contract is in harmony with the "further" agreement of the defendant as to the final payment, by which it agreed to pay the plaintiff "at least" $7,503 less whatever amounts had been paid in the meantime. That the parties so understood the contract finds support in the absence of evidence that the defendant paid the plaintiff anything except for payrolls, with the possible exception of $50 paid on July 6. The evidence does not disclose the reason for this payment. The phrase "less whatever amounts may hereafter be paid by the . . . [defendant] to the . . . [plaintiff] under the terms of this agreement" is explained in paragraph 4 of the contract whereby the defendant "further" agreed to pay the plaintiff the amount of Wilgoren's payrolls on June 25 and on each Friday thereafter, and in paragraph 6 (a) whereby the plaintiff agreed to apply "all payments" received from the defendant to the payment of Wilgoren's weekly payrolls "up to but not exceeding a total of $2,000." It was over these payroll payments and their application that the parties came to grief.

The payroll that was due on July 9 apparently was not met until July 12, when the defendant gave the plaintiff a check for its amount. Notwithstanding this, however, the auditor found, and the judge adopted this finding, that the defendant complied to the letter with the provisions of

paragraph 4.   On July 10 the plaintiff's attorney told the defendant's representative that the plaintiff would pay only $230.46 of the $457.73, the amount of the payroll due on July 9, evidently for the reason that with this payment the plaintiff would have paid $2,000 on account of payrolls, which was its limit as provided by paragraph 6 (a).   The plaintiff was given a check for $457.73, which was cashed and $230.46 was paid to the workmen.   Wilgoren, at the time, stated that he could not make up the deficit, and the defendant's representative then read a notice to him to the effect that unless he proceeded within twenty-four hours to prosecute the work called for under the subcontract, the defendant would consider that there had been a breach of the contract, and the contract terminated.   The trial evidently proceeded upon the theory that Wilgoren was thereafter in default.   He was a party to the three-party agreement, and it is a fair question whether by this agreement the defendant did not obligate itself to provide the payrolls, regardless of the subcontract.   The plaintiff was within its rights under paragraph 6 (a).   Wilgoren had assigned to the plaintiff everything that was coming to him under the subcontract, and the new agreement looked to the completion of his work.   No further payments were to be made to him, except for payrolls, but the parties seem to have assumed that, notwithstanding all this, Wilgoren was required to meet the payrolls after the payments by the plaintiff had reached its $2,000 limit.   Wilgoren was not in default up to July 12.

By the terms of paragraph 2 of the contract, Wilgoren agreed to prepare and submit requisitions for materials and labor.   He did not do this beyond requesting the defendant to furnish checks for the payrolls due on June 25 and July 1.   The defendant contends that the furnishing of these requisitions was a condition precedent to any payments by it to the plaintiff, and that because of Wilgoren's failure to comply it was unable to determine the value of the labor and materials that had been furnished.

Where payment under a contract depends upon some act to be performed by the payee that is a condition precedent

to payment, failure to perform the condition disentitles the payee to payment unless some sufficient reason or excuse for not performing is shown. *Beharrell* v. *Quimby,* 162 Mass. 571. Where a contract contains mutual and dependent covenants, (see *White* v. *Abbott,* 188 Mass. 99, 101, 102,) the burden is on the plaintiff in an action for breach of the contract to prove the contract and the compliance with his covenant in order to recover, unless for some reason performance has been excused. *Pye* v. *Perry,* 217 Mass. 68. In the early case of *Johnson* v. *Reed,* 9 Mass. 78, reference is made on page 83 to the "common sense doctrine," so called, that the true intent of the parties, as apparent in the instrument, should determine whether covenants or promises are independent or conditional "instead of any technical rules, of which the parties were totally ignorant," and the application of which in most cases would utterly defeat their intention. See *Tileston* v. *Newell,* 13 Mass. 406; *Howland* v. *Leach,* 11 Pick. 151, 154, 155; *Connolly* v. *Haines-Ce Brook Inc.* 277 Mass. 423, 427; *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229, 233–234. The requisitions were to be submitted to the defendant. The contract, in terms, does not make the payments, which the defendant unqualifiedly agreed to make to the plaintiff, dependent upon this requirement, and, in our opinion, the plaintiff's rights under paragraph 3 are not affected by Wilgoren's failure to submit requisitions. See *McKone* v. *Williams,* 37 Ill. App. 591; *Rusling* v. *Union Pipe & Construction Co.* 5 App. Div. (N. Y.) 448, affirmed 158 N. Y. 737; *Modern Steel Structural Co.* v. *English Construction Co.* 129 Wis. 31, 40, 41. In the circumstances it is unnecessary to consider whether it could have been found that the defendant had waived the provisions of the contract as to requisitions by supplying money for Wilgoren's payroll.

The plaintiff sues upon a contract, by the terms of which, it says, the defendant agreed to pay it a sum equal to eighty-five per cent of all materials and labor furnished by Wilgoren "up to and including the tenth day of July, 1937, less certain payments previously made . . . ; that said

payment was to be made on the eighteenth day of July 1937." As already indicated, this was not the contract, and from what has been said, it follows that, at best, the plaintiff can recover only eighty-five per cent of the value of materials and labor furnished by Wilgoren between June 14 and July 10, less the payments made by the defendant under paragraph 4 of the contract. The only evidence of value, with one exception hereinafter referred to, of any materials and labor furnished relates to periods from "March 27, 1937, up to and including July 9, 1937"; "March 31, 1937, to June 16, 1937, inclusive"; "on May 25, 1937"; and "prior to July 10, 1937." There is no evidence from which any determination of value can be made as to the period between June 14 and July 10, with one exception. That exception is that between June 24 and July 9 the plaintiff furnished Wilgoren with brick amounting to $991.55. The findings of the judge state: "From . . . [the evidence of materials and labor furnished] it is impossible to find the values as of the dates in question and there is no evidence of any determination of value by the defendant. I am therefore unable to find what was due to Wilgoren from the defendant on the above dates [up to June 14 and June 30] or on June 24, the date of the execution of the three-party agreement."

In construing paragraph 3 in connection with paragraph 1, which contains the details of the assignment by Wilgoren to the plaintiff, the agreement that, upon completion of Wilgoren's contract, the balance due will be not less than $7,503, and Wilgoren's agreement to complete his contract in accordance with its terms and provisions, the judge ruled that "the values to which reference is made are the values to be determined in accordance with the provisions of the aforesaid separate contract between the defendant and Wilgoren." We think this was error. Although the subcontract provided that the defendant was to determine the values, and although Wilgoren agreed to complete his contract, we are of opinion that it was not the intention of the parties to the new contract that the defendant should determine the values. It is true that the subcontract is

referred to, and that Wilgoren agreed to complete it "in accordance with its terms and provisions." But an examination of the entire three-party contract leads to the conclusion that these references are to the completion of the work called for. There is no evidence that the defendant placed any value upon the materials and labor furnished after June 14. It was not in the power of the plaintiff to compel it to do so. See *Vanderhoof* v. *Shell,* 42 Ore. 578, 585; *McKone* v. *Williams,* 37 Ill. App. 591; *Rusling* v. *Union Pipe & Construction Co.* 5 App. Div. (N. Y.) 448, affirmed 158 N. Y. 737; *Modern Steel Structural Co.* v. *English Construction Co.* 129 Wis. 31, 40, 41. It is expressly found that the plaintiff complied with the provisions of paragraph 6 (a) of the contract, and that it furnished materials between June 24 and July 9 amounting to $991.55. Where the plaintiff is not in default, the defendant cannot be heard to say that its failure to place values upon the materials and labor furnished, even if we assume that it was authorized so to do, is a bar to the plaintiff's right to recover.

This court on this record has power to direct the entry of judgment for the plaintiff. G. L. (Ter. Ed.) c. 231, § 124. The plaintiff paid on account of payrolls $2,000.22, and furnished materials amounting to $991.55, a total of $2,991.77. The unpaid balance of Wilgoren's payroll due July 9 is $227.27, and there is a finding that an additional sum of $176 was paid for Wilgoren's payroll for July 8 and 9. The total of these sums is $3,395.04, eighty-five per cent of which is $2,885.78. The defendant paid $2,667.73, and this deducted from the last figure leaves $218.05, for which amount the plaintiff is entitled to judgment with interest from July 19, 1937, the date of the writ.

It is unnecessary to consider the other exceptions of the plaintiff.

*Exceptions sustained.*
*Judgment for the plaintiff.*